PEARSON, TILLMAN (Retired), Associate Judge.
Appellants are two Florida licensed hearing aid specialists and a nonprofit corporation which represents hearing aid specialists in this state. They challenge a final order *1036 of the Department of Health and Rehabilitative Services prohibiting appellants from using the term “certified hearing audiologist” since use of that term is prohibited by Section 468.129 Florida Statutes (1979) and Section 468.142 Florida Statutes (1979). We affirm.
The hearing officer’s findings, which are not challenged on appeal, are as follows:
1. Prior to the regulation of hearing aid dispensers in Florida in 1967, the National Hearing Aid Society and its Florida chapter, the Florida Hearing Aid Society, were voluntary non-profit organizations established to provide information to, and establish certain standards for, its members.
2. In 1951 the National Hearing Aid Society inaugurated the title Certified Hearing Aid Audiologist and established certain criteria, for certification. These included two years’ experience dispensing hearing aids, a letter from a doctor of medicine that he had observed a fitting that had been done by the applicant, credit reference, complete the National Hearing Aid Society’s certified exam or its equivalent, and submit a fee to the National Hearing Aid Society. Subsequent to 1967, passing of the Florida exam for licensure as a hearing aid specialist was deemed equivalent to the National Hearing Aid Society’s exam.
3. The term Certified Hearing Aid Audiologist was patented by the National Hearing Aid Society in 1970.
4. These hearing aid dispensers certified by the National Hearing Aid Society (NHAS) were authorized by NHAS to advertise and hold themselves out at CHAA’s.
5. Webster’s New Collegiate Dictionary (1977) defines audiology as: A branch of science dealing with hearing; specif.: therapy of individuals having impaired hearing.
6. Audiologists are licensed in Florida pursuant to Section 468.139 et seq. Florida Statutes (1979) which requires formal education and training before the applicant for licensure becomes qualified to take the examination which must be passed before certification is granted.
7. Most audiologists are designated as clinical audiologists apparently because their testing and diagnosing of clients occurs in a clinic equipped with machines designed to test and diagnose hearing difficulties.
8. Many audiologists dispense and fit hearing aids as to some otologists. The latter are exempted from hearing aid regulation by Section 468.137(2), Florida Statutes.
9. The average person is unaware that a CHAA does not have equal (and some people believe greater) qualifications respecting hearing disorders than does an audiologist. Few people know there is any difference between the two. Even one of Petitioner’s witnesses acknowledged that a lot of physicians are confused about the term certified hearing aid audiologist. Accordingly, holding oneself out as a CHAA tends to mislead the general public when one so holding himself out is not, in fact, a qualified audiologist.
Appellants raise three points in their appeal. The first two points argue that they have a right to use the term “certified hearing aid audiologist” by reason of their usage of that term prior to passage of Section 468.120 et seq., Florida Statutes (1979), Fitting and Dispensing of Hearing Aids Act, and Section 468.139 et seq., Florida Statutes (1979), Speech Pathology and Audiology Act. They also argue that use of the term is not a misrepresentation to the public contrary to Section 468.130(5). Appellants, in their third point on appeal, urge the appropriation of the term “certified hearing aid audiologist” by the state is an unconstitutional taking of private property.
Section 468.142 Florida Statutes (1979), prohibits use of the term “audiologist” by any person who is not certified by the Department of Health and Rehabilitative Services as an audiologist. Appellants, Becker and White, are not certified by the Department of Health' and Rehabilitative Services as audiologists. Section 468.141(2) defines “audiologist” as follows:
*1037 “Audiologist” means any person who examines, tests, evaluates, treats or counsels, for which a fee may be charged, persons suffering, or suspected of suffering, from disorders or conditions affecting hearing or assists persons in the perceiving of sound or improving the senses by which noises and tones are received as stimuli to the auditory faculties. A person is deemed to be an audiologist if he offers such services to the public under any title incorporating the terms “audiology,” “audiologist,” “audiological,” “hearing clinic,” “hearing clinician,” “hearing therapy,” or “hearing therapist.”
Also Section 468.129(3) authorizes HRS to refuse to issue or renew or to suspend any certificate of registration for any fitter or dispenser of hearing aids for unethical conduct or for gross malpractice in the fitting and dispensing of hearing aids. Pursuant to Section 468.130(5), unethical conduct includes:
Representing that the professional services or advice of a physician or audiologist will be used or made available in the selling, fitting, adjustment, maintenance or repair of hearing aids when that is not true, or using the words, “doctor,” “clinic,” “clinical,” “medical, clinical or research audiologist,” “audiologic” or any other like words, abbreviations or symbols which tend to connote audiological or professional services when such use is not accurate.
We find use of the term “certified hearing aid audiologist” by persons not properly certified as audiologist by the Department of Health and Rehabilitative Services to be a violation of Section 468.129 and Section 468.142. Prior use of a term or a claimed proprietary right in the term may not be used as an excuse to violate the law of the state. See Florida Public Accountants Association v. Dandelake, 98 So.2d 323 (Fla.1957). We find no merit to appellants’ first two points on appeal.
As to appellants’ third point, reasonable restrictions upon the use of property to insure the public health are valid exercises of the state’s police power.
There is no doubt that the legislature may, if the public good is deemed to demand it, require property to be used by persons, as well as their businesses to be conducted, so as to prevent harm or injury to the public.
Rights of property are subject to such limitations as are demanded by the common welfare of society, and it is within the range and scope of legislative action to declare what general regulations shall be deemed expedient. State v. Rose, 122 So. 225 (Fla.1929).
Appellants do not argue that the statutes involved are not valid exercises of the state’s police power, and the record reflects an adequate basis for the legislative action. Appellants have put forth no reasonable basis for holding this exercise of legislative authority unconstitutional.
The order is affirmed.
MILLS, C. J. and SHAW, J., concur.