Robert J. GANDEE, Terry
R. Seese, Plaintiffs,

v.

Robert G. GLASER, Margaret M. Robert,
Valenta G. Ward–Gravely, Olive M.
Webster, Cathy C. Trent, Ohio Attorney
General, Defendants.

No. C–2–88–753.

United States District Court,
S.D. Ohio, E.D.

Feb. 24, 1992.

E. Joel Wesp, Wesp and Osterkamp, Columbus, Ohio, for plaintiffs.

John C. Dowling, Susan C. Walker, Asst. Ohio Attys. Gen., Columbus, Ohio, for defendants.

Neil I. Levy, Neal Goldfarb, Melrod, Redman & Gartlan, Washington, D.C., for amicus curiae American Speech–Language–Hearing Ass'n.

## OPINION AND ORDER

KINNEARY, Senior District Judge.

This matter comes before the Court for a decision upon the briefs of the parties and a stipulated record. The Plaintiffs in this action, two licensed hearing aid fitters and

dealers, challenge Ohio's licensing scheme which prevents individuals from using certain professional titles or descriptions unless such individuals are licensed as audiologists pursuant to Ohio Revised Code 4753. Initially, however, the Court will consider the objection of the American Speech–Language–Hearing Association ("Association") to the Magistrate Judge's decision granting the Association leave to file a memorandum as amicus curiae but refusing it the right to offer evidence not of record.

## I. OBJECTION TO MAGISTRATE JUDGE'S ORDER

■ A Magistrate Judge's decision on a non-dispositive matter will be reversed only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a). The "clearly erroneous" standard applies only to factual findings made by the Magistrate Judge, while her legal conclusions will be reviewed under the more lenient "contrary to law" standard. See Fogel v. Chestnutt, 668 F.2d 100, 116 (2d Cir.1981), cert. denied sub nom. Currier v. Fogel, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); Jernryd v. Nilsson, 117 F.R.D. 416, 417 (N.D.Ill.1987). This Court's review under the "contrary to law" standard is "plenary," Jernryd, 117 F.R.D. at 417, and it "may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." Adolph Coors Co. v. Wallace, 570 F.Supp. 202, 205 (N.D.Cal.1983). Thus, this Court must exercise its independent judgment with respect to a Magistrate Judge's legal conclusions. See Hawkins v. Ohio Bell Tel. Co., 93 F.R.D. 547, 551 (S.D.Ohio 1982), aff'd without op., 785 F.2d 308 (6th Cir.1986); United States for Use and Benefit of Naberhaus–Burke v. Butt & Head, Inc., 535 F.Supp. 1155 (S.D.Ohio 1982).

■ The Magistrate Judge in this case excluded the Association's exhibits attached to its amicus brief because the Association did not participate in pretrial discovery. The Court is convinced that this decision is neither "clearly erroneous" nor "contrary to law" and must stand.

Because the privilege of being heard amicus rests solely within the discretion of the court, Leigh v. Engle, 535 F.Supp. 418, 420 (N.D.Ill.1982), it necessarily follows that the scope of the amicus' participation must also be discretionary. While it is true that "courts have exercised great liberality in permitting an amicus curiae to file a brief in a pending case, and, with further permission of the court, to argue the case and introduce evidence," United States v. Louisiana, 751 F.Supp. 608, 620 (E.D.La.1990), this Court is convinced that the Association ought not be allowed to enter evidence into the record at this stage of the litigation. Discovery has long been closed, and all parties' trial briefs have been submitted for a number of months. Any new evidence would remain unrebutted, and therefore, possibly prejudicial to the Plaintiffs. Were this Court uncomfortable with the adequacy of the state's defense of its statute, the equities of the situation might appear different. However, the Court is convinced that both parties have fully and ably presented their positions, thus rendering the Association's evidence not only prejudicial, but redundant. Thus, the Memorandum of the American Speech–Language–Hearing Association, as amicus curiae, is hereby submitted into the record without its attached Appendix.

## II. THE MERITS OF PLAINTIFFS' CASE

Turning to the merits of the case, the Plaintiffs are two hearing aid dealers and fitters licensed under Chapter 4747 of the Ohio Revised Code. The Defendants include present and past members of the Ohio Board of Speech Pathology and Audiology ("Audiology Board"), a state board created under Chapter 4753 of the Ohio Revised Code to regulate and govern the practice and profession of audiology. The Plaintiffs allege that the Defendants, by refusing to allow the Plaintiffs to use certain titles and descriptions of services, and through the use of arbitrary and discriminatory investigations, have violated their First Amendment right to freedom of speech, their Fourteenth Amendment right

to due process and equal protection of the laws, and their "civil rights" under 42 U.S.C. § 1983. The Plaintiffs request that this Court declare Ohio Rev.Code § 4753.-02, both facially and as applied, and the actions of the Defendants, unconstitutional. Further, they request that this Court enjoin the Defendants from taking any further action against the Plaintiffs or conducting any further investigations into the activities of the Plaintiffs or any other hearing aid dealers for purported violations of Chapter 4753.

### A. The First Amendment Claim

■ The First Amendment to the United States Constitution, as applied to the states by operation of the Fourteenth Amendment, provides that Congress (and the states) shall make no law abridging freedom of speech. It is now well-established that commercial speech—speech that does no more than propose a commercial transaction—is entitled to only limited protection under the First Amendment. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 64–65, 103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983); *Friedman v. Rogers*, 440 U.S. 1, 9–10 & n. 9, 99 S.Ct. 887, 894 & n. 9, 59 L.Ed.2d 100 (1979); *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 456–57, 98 S.Ct. 1912, 1918–19, 56 L.Ed.2d 444 (1978). Thus, a state may prohibit commercial speech that is false or misleading, and may require that potentially misleading commercial speech be accompanied by disclaimers and disclosures in order to prevent consumers from being deceived. *Peel v. Attorney Registration and Disciplinary Comm'n*, 496 U.S. 91, 110 S.Ct. 2281, 2284, 110 L.Ed.2d 83 (1990) (opinion of Stevens, J., joined by Brennan, Blackmun & Kennedy, JJ.); *id.* at 111, 110 S.Ct. at 2293 (opin-

ion of Marshall, J., joined by Brennan, J.); *id.* at 119, 110 S.Ct. at 2297 (opinion of O'Connor, J., joined by Rehnquist, C.J. & Scalia, J.); *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982) ("Truthful advertising related to lawful activities is entitled to the protection of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions."); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it."); *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977). Thus, the Court is presented with two issues: whether the speech at issue in this case is commercial speech, and if so, whether it is false, deceptive, or misleading.[1] The Court will consider each of these in turn.

■ The Supreme Court has recognized that there exists a " 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Central Hudson*, 447 U.S. at 562, 100 S.Ct. at 2349. Yet, commercial speech, or that which is "related solely to the economic interests of the speaker and its audience," *id.* at 561, 100 S.Ct. at 2349, receives at least some level of First Amendment pro-

---

1. Commercial speech need not be false, deceptive, or misleading in order for a state to regulate it. In *Central Hudson,* the Court explained:

    If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compli-

ance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.

447 U.S. at 564, 100 S.Ct. at 2350.

tection since it not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interests in the fullest possible dissemination of information. *Id.* at 561–62, 100 S.Ct. at 2349.

■ The issue before the Court is whether the restrictions embodied in Chapter 4753 of the Ohio Revised Code involve commercial or non-commercial speech. Section 4753.02 provides that:

> No person shall practice or offer to practice the profession of speech pathology or audiology, or use in connection with his name, or otherwise assume, use, or advertise any title or description tending to convey the impression that he is a speech pathologist or audiologist unless the person is licensed under this chapter.

Section 4753.01(C) defines an audiologist as a:

> "person who practices audiology and who offers such services to the general public under any title or description of services incorporating the words 'audiology,' 'audiologist,' 'hearing clinic,' 'hearing clinician,' 'hearing therapy,' 'hearing therapist,' 'audiometry,' 'audiometrist,' or any similar titles or descriptions of services."

Pursuant to these provisions, the Audiology Board investigated, and subsequently objected to, the Plaintiffs' use of the term "Certified Hearing Aid Audiologist." The objection came in the form of a formal cease and desist letter mailed to various hearing aid fitters and dealers in Ohio, including one of the Plaintiffs in this action.

While the Plaintiffs attempt to characterize the speech at issue in this case as "pure speech," the Court is convinced otherwise. From the record available to the Court, it is apparent that the speech at issue is used in two contexts: in Plaintiffs' advertising and during sales consultations. Both contexts are wholly economic in nature, and both fit firmly within the Supreme Court's description of commercial speech as that which "proposes a commercial transaction." Neither context is deserving of the heightened protection accorded "pure speech." [2]

■ Thus, the next issue is whether the Plaintiffs' use of the term "Certified Hearing Aid Audiologist" is false, deceptive, or misleading. It is in this area that a state has the greatest authority to regulate, and indeed prohibit, commercial speech.

The Plaintiffs and Defendants essentially agree with each other's analysis with respect to the duties and responsibilities of audiologists licensed under § 4753.02 and hearing aid fitters and dealers licensed under § 4747; what they differ on, however, is the conclusion that must logically flow from their analysis. The Plaintiffs spend considerable time discussing the "functional overlap" that exists between the duties and responsibilities of a hearing aid fitter and dealer and the duties and responsibilities of an audiologist.[3] The overlap, they conclude, necessitates the conclusion that hearing aid dealers must be allowed to use such terms as "audiologist." The Defendants, while not denying the existence of some overlap, focus instead on the areas in which there is no duplication of service. Essentially, the Defendants argue that because licensed audiologists perform many functions that cannot be performed by a licensed hearing aid dealer and fitter, it is inherently misleading for the latter to use the title "audiologist." Additionally, the Defendants assert that the significant difference in educational requirements for licensure between the two professions adds further support to their argument that use of the term "audiologist" by a person not licensed under § 4753 is deceptive and misleading.

---

**2.** The case relied upon by the Plaintiffs most heavily, *Parker v. Kentucky, Board of Dentistry,* 818 F.2d 504 (6th Cir.1987), assumed without extensive discussion that the speech involved was commercial speech.

**3.** *See, e.g.,* Plaintiffs' Brief, at 4 ("[G]iven the similar methodologies and equipment operated,

and the like manner and instructions for performing these tests, the practice of hearing aid dealing and fitting and the practice of audiology in terms of testing and equipment use, at least, are functionally indistinguishable. This functional overlap is undisputed.").

Based upon a review of the duties performed by each profession, and the educational and other requirements necessary for a license from the State of Ohio, the Court is of the opinion that despite some minimal overlap between the two professions, it is inherently misleading for a hearing aid fitter and dealer to use the title "Certified Hearing Aid Audiologist." [4]

Initially, it must be noted that with respect to this exact title, the Court is not writing on a blank slate: several other entities have concluded that the use of the title "Certified Hearing Aid Audiologist" by a hearing aid fitter and dealer is inherently misleading. In 1986, the Ohio Attorney General concluded that:

[T]he use of the broad language "tending to convey the impression" indicates that the statute [§ 4753.02] will be violated if the use of a term might lead or incline a person to have the notion or feeling that one using the term is an audiologist. I believe that a consumer who sees a sign identifying a practitioner as a "hearing aid audiologist" or a "certified hearing aid audiologist" might think, or might have the "vague feeling," that the practitioner is an audiologist. Indeed, I find that the possibility of misperception is very real.

The definition of "audiologist," provided in R.C. 4753.01(C), indicates that an audiologist may be practicing under any of a variety of titles or descriptions of services, incorporating words such as "audiology," "audiologist," "hearing clinic," "hearing clinician," "hearing therapy," "hearing therapist," "audiometry," "audiometrist," or "any similar titles or descriptions of services." Because the terms "hearing aid audiologist" and "certified hearing aid audiologist" incorporate the word "audiologist," it would be logical for a consumer to assume that a person using these titles is an audiologist licensed under R.C. Chapter 4753.

1986 Ohio Attorney General Opinion No. 86–063.

Similarly, the Trademark Trial and Appeal Board of the Patent and Trademark Office analyzed whether the trademark "Certified Hearing Aid Audiologist" was deceptive pursuant to Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), and concluded that:

[T]he narrow issue facing the board is simply whether a hearing aid dealer, trained and experienced in his functions related to selecting, fitting and adapting a hearing aid, and certified by respondent as being proficient in these tasks, may properly refer to himself as a certified audiologist, in the specialty of hearing aids, that is, a "certified hearing aid audiologist." While the deposition testimony presented is, not surprisingly, contradictory, the term "audiologist", without any other identifying modifier, is commonly accepted in this country as referring to one academically trained to at least the master's degree level and that use of the term "certified hearing aid audiologist" by one not academically trained to the commonly expected level of an audiologist, does not, as respondent would have us believe, clarify the type of audiologist but, rather, deceives the public into believing that said individual is an audiologist having the kind of training and education normally associated with an individual using that designation ...

Accordingly, we conclude that the inclusion of the term "CERTIFIED HEARING AID AUDIOLOGIST" in respondent's mark is likely to deceive consumers into believing that the hearing aid dealers who use the mark are audiologists (i.e., persons academically trained to at least the master's degree level in audiology) in the hearing aid aspect of the hearing field, when in fact the hearing aid dealers do not have that degree

---

**4.** The Court agrees with the argument asserted by amicus that the existence of some overlap between the two fields is, in most respects, inapposite. If accepted by this Court and taken to its extreme, it would lead to the absurd result that, for example, because nurses, psychologists, physician's assistants, and midwives all perform some of the same functions that physicians perform, members of each of these professions would have a right to hold themselves out as physicians. To avoid this absurd result, the focus of this Court's inquiry must be on the variance between the professions and not just the similarities.

of training; and that the registered mark is deceptive within the meaning of Section 2(a) of the Trademark Act.... In the present case, we are not dealing with goods per se, but, rather, persons holding themselves out to be of a particular educational level which they are not. It is our view that all three questions noted above must be answered in the affirmative; that the hearing aid dealers holding themselves out to be "Certified Hearing Aid Audiologists" are misdescribing their qualifications and educational achievements; that it is likely that people believe this misrepresentation; and, further, that this misrepresentation would materially affect the decision of consumers to avail themselves of the services of hearing aid dealers who so hold themselves out. We find, therefore, that petitioner has shown that respondent's mark comprises deceptive matter for purposes of Section 2(a) of the Act.

*American Speech–Language–Hearing Association v. National Hearing Aid Soc'y,* 224 U.S.P.Q. (BNA) 798, 808–11 (1984) (footnotes omitted). Thus, the Trademark Trial and Appeal Board canceled the National Hearing Aid Society's registration of the term "Certified Hearing Aid Audiologist" and the Society subsequently abandoned use of the title.

Finally, the conclusion that use of the term "Certified Hearing Aid Audiologist" by a hearing aid fitter or dealer is deceptive has also been reached by several state courts. *See, e.g., Florida Hearing Aid Soc'y v. State,* 399 So.2d 1035 (Fla.App. 1981) (finding that use of the title "certified hearing aid audiologist" by persons not licensed as audiologists is not accurate and a violation of Florida law), *appeal dismissed without opinion,* 411 So.2d 382 (Fla.1981); *National Hearing Aid Soc'y v. Commonwealth,* 551 S.W.2d 247 (Ky.App.1977) (holding that hearing aid dealers using the title "certified hearing aid audiologist" knew or should have known that consumers would be deceived by their use of the term).

While none of the above is technically binding on this Court, after an independent review of the issues involved the Court does agree with the holdings of the above entities that the use of the term "certified hearing aid audiologist" by a hearing aid fitter or dealer who is not licensed by the State of Ohio as an audiologist is inherently misleading. The most obvious deception is that which was pointed out by the Trademark Trial and Appeal Board: the significant disparity in educational levels between licensed audiologists and licensed hearing aid fitters and dealers. In Ohio, there are no educational requirements whatsoever for becoming a licensed hearing aid dealer. The only requirements are that one be at least 18 years old, of good moral character, free of contagious or infectious diseases, and that one pass an examination specified and administered by the hearing aid dealers and fitters licensing board. Ohio Rev. Code § 4747.05(A). The requirements for licensure as an audiologist, on the other hand, are quite rigorous. To be eligible to take the examination to qualify for licensure as an audiologist, a person must:

1. obtain a broad general education to serve as a background for his specialized academic training and preparatory professional experience;

2. receive a bachelor's, master's, or doctor's degree, including the completion of at least 60 semester hours dealing with the normal aspects of human communication, development and disorders thereof, and clinical techniques for the evaluation and the improvement or eradication of such disorders;[5]

3. complete at least three hundred clock hours of appropriate supervised clinical experience in the professional area for which licensure is requested, dealing with a variety of communication disorders;

4. obtain at least nine calendar months of professional experience with a minimum of thirty clock hours per week.

---

**5.** The statutory requirements specify a variety of specific courses that must be completed as part of the 60 semester hour requirement. They will

not be recounted here. *See* Ohio Rev.Code § 4753.06(B).

Ohio Rev.Code § 4753.06. Given the obvious disparity in the minimal educational level required for licensure under these two provisions, the Court believes that the use of the term "audiologist" by a hearing aid dealer is likely to materially deceive or mislead consumers as to the dealer's educational level. Such deception is "material" in that it is likely that consumers would find the educational level of such an individual an important consideration, and one that would most likely affect a choice between using an audiologist or a hearing aid fitter and dealer. This deception alone justifies the State of Ohio's restriction on the use of the term "audiologist."

Moreover, it is equally apparent that the scope of the two professions at issue here are not at all conterminous.[6] While it is true that some audiologists fit hearing aids, audiologists also perform many other functions. The evidence on this point is extensive, and indeed, undisputed, and the Court will not attempt to list every function of an audiologist that is incapable of being performed by a hearing aid dealer.[7] Suffice it to say, Plaintiffs' own expert, R. David Nelson, merely admitted to a "functional overlap" and nowhere testified to the lack of substantial dissimilarities between the two professions.[8] Indeed, at many points, Mr. Nelson admitted to important differences between the two groups. *See,*

*e.g.,* Nelson Dep. at 16 ("I think it's true that the audiologist uses these tests for different objectives. They get information out of it that maybe the hearing aid dispenser because of his training is not going to ascertain, nor is he interested in. And the hearing aid dispenser may get some information from the audiometric tests that he is specifically interested in because it pertains to fitting of the hearing aid and the audiologist is not going to be terribly concerned about that."); *id.* at 24 ("Q: Would it be fair to say that the scope of practice of an audiologist is actually greater than the scope of practice of a hearing aid dealer? A: Yes."). *See also* 1986 Ohio Attorney General Opinion 86-063 ("[T]he practice of a hearing aid dealer is quite different from that of an audiologist."). Thus, given the fact that an audiologist is trained and qualified to perform a substantially greater quantity of functions than a hearing aid fitter and dealer, it is misleading and inherently deceptive for the latter to imply that he is the former. Because the title "Certified Hearing Aid Audiologist" incorporates the title "Audiologist," it deceptively implies that the holder of the title is a licensed audiologist.

This analysis also serves to differentiate the principal case relied upon by the Plaintiffs, *Parker v. Kentucky, Board of Den-*

---

**6.** This conclusion is not at all unexpected given the fact that the two professions have significant differences in licensing requirements and that the State of Ohio has created two separate boards pursuant to two separate statutory provisions to govern the two professions.

**7.** The statutory definitions highlight the difference in function between the two professions. Section 4753.01(D) defines the "Practice of Audiology" as:

the application of principles, methods, or procedures of measurement, the evaluation of, or counseling and instruction related to hearing and disorders thereof for the purpose of preventing, identifying, or modifying such disorders and conditions in individuals or groups of individuals.

The same Title of the Ohio Revised Code defines, in a substantially more limited manner, the "Practice of dealing in" or "fitting of" hearing aids as:

the sale of a hearing aid, and the measurement and testing of human hearing by means of an audiometer or by any other means for the purpose of selecting, adapting, and selling

a hearing aid to any person, and includes the making of impressions for earmolds. Ohio Rev.Code 4747.01(B).

**8.** Plaintiffs' expert testified as follows:

Q. Mr. Nelson, would it be your opinion that there is a functional overlap between audiologists and hearing aid dealers with respect to the audiometric testing that you described involving the bone conduction and air conduction tests?

A. Yes.

I think for anyone that is involved in dispensing hearing aids, I think it's fairly common knowledge that the same basic batteries of test are used by both audiologists or hearing aid dispensers.

Nelson Dep. at 32. Not only did Nelson merely suggest the existence of a functional overlap, he only did so with respect to those audiologists who dispense hearing aids. Such testimony ignores the numerous other functions that comprise the field of audiology.

*tistry,* 818 F.2d 504 (6th Cir.1987). Parker was a licensed dentist who was permitted under Kentucky law to practice in any and all of the various branches of dentistry, including orthodontia. Approximately half of his practice was devoted to orthodontia, and he took out an advertisement in the Yellow Pages that used the words "orthodontics" and "braces." The Kentucky Board of Dentistry commenced disciplinary proceedings against him for violating a statute prohibiting dentists from holding themselves out as specialists or using the name of any dental specialty (such as orthodontia) unless they are licensed as specialists. The Sixth Circuit Court of Appeals found the state's restriction to be an unconstitutional restriction on protected commercial speech in violation of the First and Fourteenth Amendments.

The distinguishing feature of *Parker* is that the plaintiff was expressly permitted to practice orthodontia, although because he had not been licensed as a specialist in orthodontia by the state he was not allowed to use the term in describing his practice. Thus, the Sixth Circuit held:

> It is argued that such words as "orthodontics," "brackets," and "braces" are either inherently or potentially misleading in that the general public will believe that such a dentist is a "specialist" in the area of orthodontics. We cannot agree that such terms are inherently misleading. Such terms are not false, but actually describe procedures *which a general practicing dentist is permitted to perform under state law.* If a state permits a dentist to perform orthodontic procedures, we do not believe a state can justify an outright ban on the use of particular terms relating to orthodontics on the theory that such terms inherently mislead the public. To the contrary, by suppressing such speech, the public will possibly be misled into believing that only orthodontists can perform orthodontic procedures. Since this information is truthful and relates to a lawful activity, it is entitled to First Amendment protection.

818 F.2d at 510 (emphasis added). In Ohio, a licensed hearing aid dealer is not permit-

ted to perform all of the functions of an audiologist, although there is a small area of "functional overlap." Thus, this is not a situation like *Parker* where the state is attempting to prevent someone from describing a service which the person is permitted to perform; rather, the state is merely prohibiting a person from describing a service he does not perform or calling himself something which he is not. The State of Ohio clearly has a substantial interest in such endeavors. *See, e.g., Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1978) ("the State bears special responsibility for maintaining standards among members of the licensed professions").

█ The Plaintiffs' final First Amendment argument—that the Ohio audiology statute is overbroad and, therefore, facially invalid—is also without merit. The overbreadth doctrine constitutes an exception to the traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to "chill" the exercise of rights guaranteed protection. *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Under this doctrine, litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute ... may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). In order for a statute to be found unconstitutional on its face on overbreadth grounds, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protection of parties not before the Court...." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Because invalidation of a statute on overbreadth grounds is, "manifestly, strong medicine," the doctrine is to be employed "sparingly." *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916.

■ In addressing a facial overbreadth challenge, this court must first determine whether the regulation reaches a substantial amount of constitutionally protected conduct. *Leonardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir.1990). The Court can only conclude that it does not. As has already been noted, misleading and deceptive commercial speech is not constitutionally protected. The statute at issue merely seeks to prevent unlicensed individuals from holding themselves out to the community as licensed audiologists. In this respect, the Ohio Revised Code states:

> No person shall practice or offer to practice the profession of ... audiology, or use in connection with his name, or otherwise assume, use, or advertise any title or description tending to convey the impression that he is ... an audiologist unless the person is licensed under this chapter.

Ohio Rev.Code § 4753.02. On its face, and as applied by the Defendants, the statute merely prevents individuals such as the Plaintiffs from using any description or assuming any title (such as "Certified Hearing Aid Audiologist") which would lead the public to believe that such individual is a licensed audiologist when, in fact, he or she is not so licensed. The Plaintiffs have completely failed to identify any specific constitutionally protected speech that is arguably "chilled" by the reach of § 4753.02, and in any event, this Court believes that no such area of "chilled" speech exists.[9]

To sum up, it is the conclusion of this Court that the speech involved in this case is "commercial speech," and as such, it can be regulated by the state if it is found to be inherently or potentially deceptive or misleading. It is the further conclusion of the Court that the use of the term "audiologist" by anyone other than a licensed audiologist is inherently misleading and may be proscribed by the State of Ohio as a valid exercise of its police powers. Finally, the statute is not overbroad, and does not serve to chill a substantial amount of constitutionally protected speech.

### B. The Void for Vagueness Claim

■ The due process clause of the Fourteenth Amendment mandates that statutes governing conduct must give adequate warning of what conduct is permitted and what conduct is forbidden. *Diebold, Inc. v. Marshall*, 585 F.2d 1327 (6th Cir.1978). A statute will be declared unconstitutionally vague only where it is determined that a person of ordinary intelligence does not have a reasonable opportunity to know what conduct is prohibited by the statute. *Grayned v. Rockford*, 408 U.S. 104, 107, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

■ The same considerations which persuaded this Court to deny the overbreadth challenge also persuade this Court to hold that the statute is not void for vagueness.[10] Above, this Court decided that the statute in question, Ohio Rev.Code § 4753.02, permissibly proscribed the use of a limited range of misleading commer-

---

**9.** The Court's decision on this point is further supported by the fact that the overbreadth doctrine does not apply to commercial speech with its usual force. *Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977) ("the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context"). Thus, Plaintiffs only have standing to challenge the statute as applied to them, not as it might be applied to others.

**10.** A determination that a statute is not overbroad does not necessarily command a determination that the statute is not void for vagueness. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982), *reh'g denied,*

456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982) (a law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process). Nevertheless, the two arguments are related. *Id.* at 494 n. 6, 102 S.Ct. at 1191 n. 6 ("[T]he vagueness of a law affects overbreadth analysis. The Court has long recognized that ambiguous meanings cause citizens to '"steer far wider of the unlawful zone"' ... than if the boundaries of the forbidden areas were clearly marked.'") (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964) (quoting *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)).

cial speech, but did not impermissibly proscribe the use of a substantial quantity of constitutionally protected speech. Assumed in that determination is the finding that reasonable men can determine—from the language of the statute—that which is misleading and therefore proscribed. There is simply "no constitutional requirement that legislation be written with scientific precision to be enforceable." *Vanater v. South Point,* 717 F.Supp. 1236, 1243 (S.D.Ohio 1989). *See also Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) ("The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.").

■ Moreover, the Plaintiffs are without standing to challenge the statute except as it is being applied to them by the State of Ohio. The Supreme Court has explained that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). While this action has at its heart First Amendment freedoms, this Court has already held that the statute does not fail overbreadth challenge, and thus, *Mazurie's* excepting language does not apply. The result is that the Plaintiffs are not entitled to use the overbreadth doctrine's liberal standing requirements in their void for vagueness challenge, and may therefore only challenge Ohio's statute as it was, and is, applied to them. *See Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *Vanater,* 717 F.Supp. at 1243 (same). Because the only conduct at issue here is the Plaintiffs' use of the title "Certified Hearing Aid Audiologist," and because that title is clearly proscribed by the statute, the Plaintiffs' vagueness argument must fail.

## C. The Equal Protection Claim

■ The Plaintiffs argue that Ohio Rev.Code § 4753.02 violates the equal protection clause through its discriminatory treatment against hearing aid dealers and fitters. Because First Amendment issues are involved, they also argue that such treatment must be measured against a strict scrutiny standard.

This Court disagrees with both arguments. While important First Amendment issues are involved in this case, it is not true that the Plaintiffs have a fundamental right to use deceptive and misleading commercial speech. Rather, the Court is of the opinion that Ohio's audiology statute must be reviewed under the standard announced in *New Orleans v. Duke:*

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.... In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, in the local economics sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (citations omitted).

Under this test, a state enactment will be upheld if it bears a rational relationship to a legitimate state interest. *Vanater,* 717 F.Supp. at 1242. The Court is convinced that Ohio Rev.Code § 4753.02 not only satisfies this test, but would also satisfy the strict scrutiny test if it were to be applied. It is beyond dispute that the states have a compelling interest not only in regulating the licensed professions, but also in prohib-

iting or restricting the use of misleading and deceptive commercial speech. These interests are heightened to a great degree where, as here, the physical health of a state's citizens is involved. Ohio Revised Code § 4753.02 is merely an attempt by the Ohio legislature to ensure that those individuals who engage in the various professions that deal with human hearing are classified in a manner that unambiguously informs the public of the individual's education and skills. It is narrowly tailored in that it merely seeks to prevent the members of one licensed profession from holding themselves out as members of a different—and undoubtedly more skilled and educated—licensed profession. Thus, it is in all respects substantially related to a compelling government interest.[11]

### D. The Section 1983 Claim

Because 42 U.S.C. § 1983 does not create any substantive rights but merely creates a cause of action for the violation of federally guaranteed rights, *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), and because this Court has previously concluded that not such violation has occurred, this claim, too, must fail.

WHEREUPON, upon consideration and being duly advised, the Court finds the decision of the Magistrate Judge to admit the amicus curiae brief of the American Speech–Language–Hearing Association without its attached exhibits to be without error and it is, therefore, AFFIRMED. Furthermore, the Court finds Ohio Rev. Code § 4753.02 to be a constitutional enactment in all respects and not in violation of either the First or the Fourteenth Amendments to the United States Constitution. Judgment shall be entered in favor of the Defendants. This case is dismissed in its entirety.

IT IS SO ORDERED.

---

**11.** The Court also can find no constitutional violation in the "arbitrary and widespread investigations" conducted by the Defendants. While it is true that the Defendants may not "[r]estrict a person licensed under Chapter 4747. of the Revised Code from engaging in the duties as defined in that chapter," Ohio Rev.Code § 4753.-12(I), this Court can find no support for the proposition that the simple act of mailing cease and desist letters ordering persons licensed under § 4747 to refrain from presenting themselves as licensed under § 4753, is a violation of any right guaranteed to the Plaintiffs. Had they chosen to ignore the letters, the matter would simply have been decided in a court of law, as it is now.