**Jane DOE, David W. Taylor, and Julie A. Taylor, individually, and as best next friend and natural guardian of Jane Doe, Plaintiffs,**

v.

**ARAMARK EDUCATIONAL, RESOURCES, INC., Defendant.**

**No. 3–01–0245.**

United States District Court, M.D. Tennessee, Nashville Division.

March 22, 2002.

Winston S. Evans, Evans, Jones & Reynolds, Nashville, TN, for plaintiffs.

Rebecca Wells Demaree, Cornelius & Collins, LLP, Nashville, TN, Carol Patrick Michel, Deborah Ann Ausburn, Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, Atlanta, GA, Helen Mary Donnelly, Knoxville, TN, for defendant.

## MEMORANDUM AND ORDER

WISEMAN, Senior District Judge.

Before the Court are cross motions for review of the magistrate's December 17, 2001

order concerning Plaintiffs' discovery of various settlement agreements between Defendant and the plaintiffs in several related cases and the settlement agreement between Defendant and a third party in an unrelated Ohio case. For the reasons set forth in this memorandum, this Court finds that none of the settlement agreements sought by Plaintiffs are discoverable. Accordingly, the magistrate's ruling concerning discovery of these settlement agreements is REVERSED in its entirety.

## I. Pertinent Facts

Aramark Educational Resources, Inc. ("AER" or "Defendant") runs a day care center in Donelson, Tennessee. Daniel Towery ("Towery") was hired by AER as a teacher at the Donelson center and sexually abused multiple children that were placed in his care. One of the children Towery abused was Plaintiff Jane Doe. When the abuse at the Donelson Center was discovered, Towery was indicted for ten counts of child rape and five counts of aggravated sexual battery, including two counts of child rape and one count of aggravated sexual abuse against Jane Doe. Towery pled guilty to five counts of child rape and two counts of aggravated sexual battery, including the count for aggravated sexual battery against Jane Doe. Towery is serving a sentence of seventy years.

Jane Doe and her parents, Julie and David Taylor, ("Plaintiffs") brought this suit claiming damages under the theories of vicarious liability, negligent hiring, negligent supervision, and failure to train. Plaintiffs also seek punitive damages. In its answer, AER admits that Towery engaged in inappropriate sexual contact with Plaintiff Jane Doe on two occasions, but denies that it has been reckless, grossly negligent, or negligent. AER also denies that it is liable for the criminal acts of Towery.

## II. The Magistrate's Order

Plaintiffs served requests for the production of documents on AER seeking settlement agreements in five or six already-settled Tennessee cases involving Towery ("the Towery Settlement Agreements"). Plaintiffs also sought production of the settlement agreement reached in an unrelated suit brought against AER involving alleged molestation at a day care center in Ohio ("the Ohio case" or "the Ohio agreement"). AER objected and Plaintiffs filed a Motion to Compel. After a hearing, the magistrate entered an order that stated in pertinent part:

> If [plaintiffs] can show that the amounts of the settlement agreements are either relevant to the claims or defenses in this case or reasonably calculated to lead to admissible evidence, they are discoverable. . . . [W]hether discovery will be admissible under Rule 408 is not the same question as whether the information sought is discoverable. However the Court cannot ignore the public policy that encourages settlements-even under terms of confidentiality-as a means of resolving litigation. . . . the Court finds that the settlement of the prior case is not likely to [have][sic] much affect [sic] upon settlement in this and the related cases. In contrast, the amounts for which the defendant settled related cases could clearly have an impact on settlement negotiations in this and other related, pending cases.

> The Court finds that the amount paid to the plaintiffs in the Ohio case could lead to admissible evidence in this case because of the plaintiffs' claim for punitive damages and could be relevant to the issues of notice and continuing pattern. The defendant shall produce the settlement agreement in the Ohio case to the plaintiffs. [the Court then sets forth disclosure restrictions] . . .

> On the other hand, the Court finds that the amounts of the settlements in the related Towery cases are neither relevant nor reasonably calculated to lead to admissible evidence, with one exception. Should the defendant at trial espouse a position that it settled the other Towery cases for nuisance value or otherwise open the door to be impeached by the settlement agreements, the settlement agreements should be immediately available to plaintiffs to use for impeachment purposes. Therefore the defendant shall file the Towery settlement agreements under seal simultaneously with the filing of the pretrial order, so

that they will be immediately available for use by the plaintiff if the circumstances warrant..... Magistrate Order Entered December 17, 2001.

Plaintiffs seek review of the portion of the magistrate's order that delays the production of the Towery Settlement Agreements and places them under seal. Plaintiffs argue that the settlement agreements are discoverable and admissible for impeachment purposes as well as evidence of notice and continuing pattern of conduct on the part of AER. Defendant does not oppose the magistrate's order regarding the under seal production of the Towery Settlement Agreements at the pretrial conference. Instead, AER seeks reversal of the magistrate's ruling that AER immediately produce the settlement agreement from the Ohio case. This issue of whether the content of settlement agreements is discoverable is one of first impression for this Court and this Circuit.

## III. Standard of Review

This Court may reverse or modify a magistrate's order only if "it is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). A finding is "clearly erroneous" when the reviewing court on the entire evidence "is left with the definite and firm conviction that a mistake has been committed." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985). When examining legal conclusions under the "contrary to law" standard, the Court may overturn "any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D.Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994).

## IV. Discussion

This is a discovery dispute. The threshold issue in any discovery dispute is determining whether the requested discovery meets the requirements of Federal Rule of Civil Procedure 26 regarding relevance. Under Rule 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ..." Fed.R.Civ.P. 26(b)(1). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *See Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir.1998). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Rule 26(b)(1) establishes one such discovery boundary by requiring relevant evidence that is inadmissible at trial to be reasonably calculated to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(b)(1).

Plaintiffs are seeking the production of settlement evidence. In order to determine if that settlement evidence is discoverable under Rule 26(b)(1), the Court must first determine if the settlement evidence is admissible or inadmissible at trial. If the settlement evidence is found to be inadmissible, Rule 26(b)(1) requires that the settlement evidence sought by Plaintiffs be reasonably calculated to lead to admissible evidence in order for the agreements to be discoverable. Therefore, contrary to the magistrate's determination that "whether discovery will be admissible under Rule 408 is not the same question as whether the information sought is discoverable," the question of the admissibility of the settlement agreements at trial is the central question in the determination of whether or not the settlement agreements Plaintiffs seek are indeed discoverable.

Federal Rule of Evidence 408 provides that evidence of a settlement offer or acceptance may not be admitted to show liability for or invalidity of the claim or its amount.[1] Fed.R.Evid. 408. In *Korn v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 264263

---

1. Federal Rule of Evidence 408 states in relevant part:

Evidence of (1) furnishing ... or (2) accepting ... a valuable consideration in compromising ... a claim ... is not admissible to prove liability for or invalidity of the claim or its amount.... This rule does not require the exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(6th Cir.1994), the Sixth Circuit explained the law regarding Rule 408 as follows:

> The rule ... does not require exclusion when the evidence is offered for another purpose [other than to prove liability or for either validity or amount of a claim], such as proving bias or prejudice of a witness, negativing a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution. 2 Wienstein & Berger, Wienstein's Evidence P 408[01] (1992).

> The purpose of the rule recognizes that disputes are often settled for reasons having nothing to do with the merits of a claim. A potential defendant may settle from a simple desire for peace, judging that the expense and inconvenience of litigation are worth paying a certain sum to avoid. This being so, evidence of a settlement may have little relevance to the validity of the claim and may subvert the truth-finding goal of the trial. *United States v. Hays*, 872 F.2d 582, 589 (5th Cir.1989)("It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back.").

> Evidence must be excluded under Rule 408 if it tends to show:

> (1) either (a) the defendant's offer, or

> (b) the plaintiff's acceptance of

> (2) a valuable consideration

> (3) in compromise of a disputed claim.

> Such evidence is inadmissible if it is offered to show the invalidity of the plaintiff's claim or the liability of the defendant. 23 Wright & Graham Federal Practice and Procedure, s 5303 at 176 (1980). 1994 WL 264263 at *6.

In this case, Plaintiffs seek to discover the monetary terms of the Towery Settlement Agreements and the Ohio agreement for the purpose of admitting the settlement amounts as evidence at trial. Plaintiffs argue that the Towery Settlement Agreements and the Ohio agreement are relevant and admissible for several purposes. First, Plaintiffs assert that the settlement agreements are admissible for impeachment purposes. Plaintiffs claim AER will take the position at trial that the abuse in the related Towery cases and the Ohio case was minor or that the abuse was not cause for concern. Plaintiffs contend that the amount of each settlement, if significant, will impeach AER's claims of insignificance through the inference that AER would not settle an insignificant child abuse claim for a significant sum of money. In other words, a significant settlement sum would be, according to Plaintiffs, evidence of significant sexual abuse by an AER employee.

Plaintiffs further contend that the settlement in the Ohio case is admissible as substantive evidence on the issues of notice and continuing pattern of conduct. Plaintiffs argue that AER's settlement of prior litigation involving allegations of sexual abuse is evidence of notice concerning the insufficiency of AER's policies and procedures concerning prevention and detection of sexual abuse at its day care centers. Plaintiffs further assert that the Ohio settlement, coupled with the subsequent settlements in several of the related Towery cases, is evidence of AER's continuing pattern of conduct of failing to implement effective abuse prevention and detection policies and procedures. Plaintiffs also argue that the multiple settlement agreements are admissible evidence of recklessness on the part of AER and support their claim for punitive damages.

It is clear to this Court that Plaintiffs' sole interest in discovering the Towery Settlement Agreements and the Ohio agreement is to offer this evidence at trial as proof of AER's liability in those settled cases and by inference in this case. While Rule 408 provides for the admission of settlement evidence under certain circumstances, the rule clearly prohibits the admission of settlement evidence offered to prove liability. This prohibition clearly covers evidence offered to suggest the following inference: that because a settlement offer was made, the offeror must be liable because people do not offer to pay for things for which they are not liable. Yet this is the very inference Plaintiffs are seeking to offer to the jury in this case.

Plaintiffs' arguments that the Towery Settlement Agreements are admissible for im-

peachment and that the Ohio agreement is admissible on the issues of notice and continuing pattern of conduct are in reality arguments that the agreements are admissible to show that sexual abuse occurred in the settled cases and AER was liable for the abuse. Both in their briefs and again at oral argument, Plaintiffs claimed that

> AER will contend that Towery did not abuse certain children[, and] it may be that AER has paid substantial amounts to settle claims of many of those same children. Obviously, AER can be thoroughly impeached if it develops that AER paid a substantial settlement to one or more of those children who it contends not to have been sexually abused.

> In addition, the Towery Settlement Agreements are relevant and admissible to impeach AER's claim that it properly supervised Towery. The very fact Towery was able to abuse several victims on repeated occasions demonstrates that AER failed to supervise Towery.... Apparently, AER has already entered into six settlements with other victims of Towery. This tends to show that Towery abused at least six children, in addition to Jane Doe.

Plaintiffs further argued that the Ohio agreement is admissible as evidence of notice and continuing pattern of conduct stating

> ... the Taylors believe that [the Ohio incident] was cause for concern.... Furthermore, the greater the amount of the settlement, the more reason there is to believe that the incident was so serious as to be full notice to AER that its policies and procedures had to be changed.

> In fact, a large settlement would indicate that the incident was not just notice; it was alarming and was the proverbial "red flag." ... Whether the incident was sufficiently serious can be debated ad nauseam by exhaustively reviewing the facts of the incident in [the] Ohio case. However, discovery and the trial of this matter can be shortened by focusing on the acid test; the amount for which the parties settled the litigation in the Ohio case.

Finally, Plaintiffs claimed that the terms of the Ohio agreement are admissible evidence on the issue of the amount of punitive damages. Plaintiffs argued that

> the more severe the circumstances of that [Ohio] similar incident, the more reason there is to conclude that AER's failure to take any action as a result of that incident was reckless conduct.... The recklessness of AER's conduct and the need to deter AER from similar conduct is directly proportional to the amount paid in the settlement of the Ohio case.

These assertions by Plaintiffs make it clear to this Court that Plaintiffs' intended use of the settlement agreements in this case is to prove to the jury AER's liability in those settled cases and then, by inference, prove AER's liability in this case. Both Rule 408 and common sense dictate the principle that the fact of settlement does not equal liability. Indeed, the use of settlement evidence for this purpose is at the very core of what Rule 408 and the policies behind it prohibit. Rule 408 recognizes that the fact of settlement and the amount of that settlement are affected by numerous factors, many having no relationship to a concession of weakness of position or admission of liability. See Fed.R.Evid. 408 Advisory Committee Notes. In addition, the admission into evidence at trial of such an inference would have the effect of deterring settlements in direct contradiction to the policy goals of Rule 408. Nonetheless, proving AER's liability through the settlement agreements is the basis upon which Plaintiffs argue for the discoverability and admissibility of the Towery Settlement Agreements and the Ohio agreement in this case.

Rule 408 and its policy goal of encouraging settlements are accorded a sanctity that would be violated if admission of the settlement agreements were allowed in this case. While Rule 408 provides for the admissibility of settlement evidence for certain purposes, the Court finds that the settlement agreements sought by Plaintiffs are not admissible under Rule 408 for the purposes identified by Plaintiffs. Furthermore, the Court is convinced that even if Plaintiffs were somehow able to establish a legitimate purpose for admission of the settlement agreements under Rule 408, the prejudice that would result from the injection of this settlement evidence

into trial would far outweigh their probative value and the agreements would be inadmissible under Fed.R.Evid. 403. Moreover, the Court is convinced that a limiting instruction to the jury on the proper consideration of the settlement evidence would be insufficient to prevent improper consideration of the evidence by the jury. Undoubtedly, Plaintiffs will have the opportunity to offer proof of notice, continuing pattern of conduct, negligent supervision, and negligent hiring by means far less offensive to the policies behind Rule 408, *see Ramada Dev. Co. v. Rauch,* 644 F.2d 1097, 1107 (5th Cir.1981)("notice could be effectively proved by means less in conflict with the policy behind rule 408"), and by means far less prejudicial to Defendant.

A finding that the Towery Settlement Agreements and the Ohio agreement are inadmissible under Rule 408 returns the Court's analysis to Fed.R.Civ.P 26(b)(1). Because the agreements are inadmissible at trial, Rule 26(b)(1) states that the agreements are discoverable only if there is a showing that the agreements are reasonably calculated to lead to admissible evidence. Plaintiffs have made it clear that they seek production of the settlement agreements at issue here for their own sake and not for any evidence the agreements might lead them to discover. Thus, for the reasons already discussed concerning the inadmissibility of the settlement agreements, this Court finds that Plaintiffs have failed to demonstrate any claim or defense to which the Towery Settlement Agreements or the Ohio agreement would be relevant or any evidence indicating the agreements are reasonably calculated to lead to admissible evidence. The Towery Settlement Agreements and the settlement agreement in the Ohio case therefore are not discoverable under Rule 26(b)(1) and the magistrate's order to the contrary is found to be clearly erroneous and contrary to law.

V. Conclusion

The Court finds that the Towery Settlement Agreements and the Ohio agreement sought by the Plaintiffs in this case are not discoverable. Therefore, the magistrate's order concerning the discoverability of the Towery Settlement Agreements and the Ohio agreement is hereby REVERSED in its entirety and it is ORDERED that there will be no production or discovery whatsoever of any of these settlement agreements.

It is so ORDERED.