*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0266p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

BEVERAGE DISTRIBUTORS, INC.; DAYTON
HEIDELBERG DISTRIBUTING COMPANY, INC.;
ESBER BEVERAGE COMPANY; TRAMONTE
DISTRIBUTING CO.; MUXIE DISTRIBUTING
CO., INC.,

        *Plaintiffs-Appellees*,

OHIO VALLEY WINE COMPANY,

        *Intervenor Plaintiff*,

    *v.*

MILLER BREWING COMPANY; SABMILLER,
plc SABMILLER HOUSE; MILLERCOORS,
LLC; COORS BREWING COMPANY; MOLSON
COORS BREWING COMPANY,

        *Defendants-Appellants*,

ADOLPH COORS COMPANY,

        *Defendant.*

No. 11-3484

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos.: 2:08-cv-827; 2:08-cv-931; 2:08-cv-1112; 2:08-CV-1131;
2:08-cv-1136—Michael H. Watson, District Judge.

Argued: May 29, 2012

Decided and Filed: August 16, 2012

Before: MARTIN, GILMAN, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** L. Joseph Loveland, KING & SPALDING LLP, Atlanta, Georgia, for
Appellants. Stephen W. Funk, ROETZEL & ANDRESS, Akron, Ohio, for Appellees
**ON BRIEF:** L. Joseph Loveland, Merritt E. McAlister, KING & SPALDING LLP,
Atlanta, Georgia, John Russell Chlysta, HANNA, CAMPBELL & POWELL, LLP,
Akron, Ohio, Jeffrey S. Bucholtz, KING & SPALDING LLP, Washington, D.C., for
Appellants. Stephen W. Funk, ROETZEL & ANDRESS, Akron, Ohio, David W.

Alexander, Emily E. Root, SQUIRE, SANDERS & DEMPSEY, LLP, Columbus, Ohio, Mark D. Wagoner, Jr., SHUMAKER, LOOP & KENDRICK, LLP, Toledo, Ohio, John P. Maxwell, Paul H. Malesick, Charles E. Ringer, KRUGLIAK, WILKINS, GRIFFITHS & DOUGHERTY CO., LPA, Canton, Ohio, Tracey Lancione Lloyd, Richard L. Lancione, LANCIONE LLOYD AND HOFFMAN, Bellaire, Ohio, for Appellees.

—————————

**OPINION**

—————————

BOYCE F. MARTIN, JR., Circuit Judge. MillerCoors, Miller Brewing Company ("Miller") and its parent company SABMiller, and Coors Brewing Company ("Coors") and its parent company Molson Coors Brewing Company (collectively, "the Manufacturers") appeal the district court's grant of summary judgment for Beverage Distributors, Inc., Dayton Heidelberg Distributing Co., Inc., Esber Beverage Co., Muxie Distributing Co., Inc., and Tramonte Distributing Co. (collectively, "the Distributors"). The Distributors filed lawsuits against the Manufacturers after MillerCoors—a joint venture created by Miller and Coors to sell the two brands in the United States—notified the Distributors that it intended to terminate their distributorships pursuant to its rights as a "successor manufacturer." The Distributors' suits were consolidated in the district court, where the Distributors requested injunctive relief and a judicial declaration that MillerCoors is not a "successor manufacturer" under Ohio law and, therefore, is prohibited under Ohio's Alcoholic Beverages Franchise Act ("the Act") from terminating the distributorships without "just cause" or consent. The district court found that MillerCoors is not a "successor manufacturer" under Ohio law because it is controlled by Miller and Coors, and, therefore, the Act prohibits MillerCoors from terminating the distributorships. For the following reasons, we **AFFIRM**.

I.

The district court, in *Beverage Distributors, Inc., et al. v. Miller Brewing Co., et al.*, 803 F. Supp. 2d 765, 766-68 (S.D. Ohio 2011) (citations omitted), laid out the relevant facts underlying these consolidated cases as follows:

[T]hese cases entail the creation of a joint venture, [MillerCoors] by two competing beer manufacturers, [Miller and Coors] . . . . The stated purpose of the joint venture was to better position the Miller and Coors brands to compete with the dominant beer manufacturer in the United States, Anheuser Busch.

Plaintiffs are Ohio wholesalers of beer and wine. Prior to the launch of MillerCoors in July 2008, each [Distributor] acted as the exclusive distributor of Miller and/or Coors brands within that [Distributor's] defined territory pursuant to written franchise agreements.

In about 2002, Miller began to explore a transaction with Coors. In December 2007, Miller and Coors entered a Joint Venture Agreement which contemplated the creation of MillerCoors. MillerCoors was created as a Delaware limited liability company in April 2008. On July 1, 2008, SABMiller, Miller, Molson Coors, and Coors entered the MillerCoors LCC Amended and Restated Operating Agreement ("Operating Agreement") governing the operation of the MillerCoors joint venture. On that date, Miller and Coors contributed and assigned most of their assets in the United States to MillerCoors. The assignment included the distribution agreements Miller and Coors had with [the Distributors]. Miller and Coors both engaged in restructuring of their respective businesses and assets in anticipation of the launch of MillerCoors.

Miller and Coors each have a 50% voting interest in MillerCoors. Miller has [a] 58% economic interest in MillerCoors, while Coors has a 42% economic interest in MillerCoors.

Miller and Coors each have the right to appoint five members of the ten-member MillerCoors board of directors. Miller appointed five of its own current officers or employees to serve on the MillerCoors board of directors. Likewise, Coors appointed five of its own current officers or employees to the MillerCoors board . . . . Directors may be removed at any time with or without cause by the company that appointed them. The board members owe their fiduciary duty to the company that appointed them, not to MillerCoors or the other directors. If the MillerCoors board is deadlocked, the matter is referred to the CEOs of SAB Miller [and] Molson Coors. If the CEOs are unable to agree, the matter is deemed to have not been approved by the board.

The MillerCoors board of directors did not appoint MillerCoors' executive officers. Rather, Miller and Coors each selected the officers of MillerCoors. For example, Coors appointed the CEO and Miller appointed the CFO. All of the executive officers of MillerCoors are former officers or employees of Miller or Coors . . . . The four-member committee that recommends executive compensation and benefits to the MillerCoors board includes the CEOs of SAB Miller and Molson Coors or their nominees. The Operating Agreement provides for monthly cross-functional meetings between the MillerCoors executives and their

counterparts in SAB Miller and Molson Coors.  Thus, the Operating Agreement contemplates that the CEO of MillerCoors will meet monthly with the CEOs of SAB Miller and Molson Coors.  Similarly, the CFO of MillerCoors is required to meet monthly with the CFOs of SAB Miller and Molson Coors.  MillerCoors . . . confirmed that the cross-functional meetings occur . . . .

MillerCoors' revenues and cash are distributed directly to Miller and Coors.  MillerCoors then asks Miller and Coors for cash back to meet MillerCoors' operating and capital requirements. MillerCoors does not take on any debt under this arrangement.

Between August 19 and September 4, 2008, MillerCoors notified [the Distributors] that it intended to terminate their distribution rights as a successor manufacturer pursuant to Ohio Rev. Code § 1333.85(D). [The Distributors] began filing these consolidated lawsuits shortly thereafter, seeking a declaration that [the Manufacturers] lack just cause or any other basis to terminate their distributorships, and an injunction preventing [the Manufacturers] from terminating [the Distributors].

Under Ohio Revised Code § 1333.85:

[N]o manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the *prior consent* of the other party for other than *just cause* and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation, failure to renew, or substantial change.

(emphasis added).  The Act provides two exceptions to this rule: the first, section 1333.85(A), is not at issue in this case; the second, section 1333.85(D), is the "successor manufacturer" exception at issue here.  Section 1333.85(D) provides, in part:

If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand . . . . If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal.

Section 1333.82(B) of the Act defines a "manufacturer" to be "a person, whether located in this state or elsewhere, that manufactures or supplies alcoholic beverages to distributors in this state." The Act does not define "successor manufacturer."

The parties executed standstill agreements to maintain the status quo of their distributor agreements during the pendency of the litigation; the Distributors' request for a declaration remained before the district court. Relying on section 1333.85(B)(4)—which provides that "[a] manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control" does not constitute "just cause" for termination—the district court found as a matter of law that Miller and Coors exercise control over MillerCoors and, therefore, that MillerCoors is not a "successor manufacturer" under section 1333.85(D). The district court also found that, because MillerCoors had not demonstrated just cause and the Distributors did not consent, MillerCoors is prohibited from terminating the distributorships under the general provisions of section 1333.85.

The district court granted the Distributors' motions for summary judgment and denied the Manufacturers' motions for summary judgment. The Manufacturers appeal, arguing that MillerCoors is a "successor manufacturer" under Ohio law and, therefore, MillerCoors has the right under section 1333.85(D) to terminate its distributorships without being bound by the just cause and consent restrictions outlined in the introductory paragraph of section 1333.85.

II.

"This Court reviews a district court's grant of summary judgment de novo." *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012) (alteration and citation omitted). Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892

(6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Because federal jurisdiction here is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332, and because the parties ask this Court to interpret an Ohio statute, we apply Ohio substantive law to the state-law claims presented. *See Kessler v. Visteon Corp.*, 448 F.3d 326, 329-30 (6th Cir. 2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005)). "If the [Ohio] Supreme Court has not yet addressed the issue presented, [this Court] must predict how it would rule, by looking to 'all relevant data,' including state appellate decisions." *Id.* at 330. "[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945); *Kessler*, 448 F.3d at 330.

### III.

On appeal, the Manufacturers argue that the district court erred in finding that MillerCoors is not a "successor manufacturer." They argue that, contrary to the findings of the district court, MillerCoors is a "successor manufacturer" under the Act because MillerCoors has "acquire[d] all or substantially all of the stock or assets of [Miller and Coors] through merger or acquisition." § 1333.85(D). The Manufacturers claim that, as a result, MillerCoors may terminate its distributorships lawfully under section 1333.85(D) by providing compensation and timely notice to the distributors, and without the just cause or consent typically required under the Act.

Under Ohio law, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for [Ohio courts] to apply the rules of statutory interpretation. Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent." *Symmes Twp. Bd.*

*of Trs. v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057, 1061 (Ohio 2000) (citations and internal quotation marks omitted).

As previously noted, section 1333.85(D) identifies a "successor manufacturer" as one who "acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer." The Distributors argue that this definition must be read in light of the limiting language of section 1333.85(B)(4), which provides:

> [T]he following event[] shall not constitute just cause for cancellation of or failure to renew a franchise or substantially changing a sales area or territory without the prior consent of the other party:
>
> . . .
> (4) A manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it *exercises control*.

(emphasis added). According to the Distributors, because the Act does not consider a manufacturer's sale of its product or brand to a company over which the seller exercises control to be "just cause" for termination, such a sale also cannot be sufficient to qualify for the less-restrictive termination process under section 1333.85(D). The Distributors note that a contrary reading of the Act would render subsection (B)(4) meaningless because a new manufacturer created out of a corporate restructuring where the original manufacturer retains some control could simply terminate distributorships without cause under subsection (D). The Manufacturers, on the other hand, argue that subsections 1333.85(B) and (D) should be read independently, with section 1333.85(B) governing just cause termination rights of non-successor manufacturers and section 1333.85(D) governing the exceptional termination rights of successor manufacturers.

Because the Distributors and the Manufacturers offer contradictory and facially reasonable statutory interpretations as to whether the simple definition in section 1333.85(D) is further limited by the just cause requirements of section 1333.85(B), *see Symmes Twp.*, 87 Ohio St.3d at 553, 721 N.E.2d at 1061, we follow the lead of Ohio

courts addressing this question and look to the Act's broader text and legislative intent to define "successor manufacturer." *See, e.g.*, *Esber Beverage Co. v. Labatt USA Operating Co., LLC*, No. 2012-Ohio-1183, 2012 WL 983171 (Ohio App. 5 Dist., Mar. 12, 2012). Noting that "[a] court must read various provisions of a statute consistently and presume that the legislature intended the entire statute to have meaning and effect," *Esber Beverage Co. v. Heineken USA, Inc.*, 2011 WL 5626592, ¶ 22 (Ohio App. 5 Dist., Nov. 14, 2011) (internal quotation marks omitted), the Ohio Court of Appeals, *see, e.g.*, *id.* at ¶¶ 22-24 (citations and internal quotation marks omitted), has reasoned as follows:

> No plausible reason exists as to why the legislature would expressly deny termination rights in one section, then several paragraphs later, create an exception that would swallow the original rule. Moreover, it would not make sense for § 1333.85(D) to condition termination rights on a "merger or acquisition," if a contrived sale and/or paper merger, like the merger in [*Heineken*], qualified. If the legislature truly intended to grant manufacturers the ability to buy their way out of franchise agreements by paying the distributor for the diminished value of its business, it would have simply said so.
>
> Furthermore, the Act is designed in part to protect distributors from certain practices of beverage manufacturers . . . .
>
> If the exception to the just cause requirement for successor manufacturers were read narrowly, and the proceedings about compliance with that provision were confined to a review of documents alone, it would be too easy for a manufacturer to set up a new entity which, on paper, looks like a business that is not under the control of its predecessor, while at the same time exercising control over the new entity by disregarding the language of the written instruments that purported to transfer control.

Ohio courts have interpreted the Act as "demonstrat[ing] clear legislative intent to deny manufacturers the ability to terminate franchises due to corporate reorganizations or the shifting of brands among entities under common control." *Beverage Distribs., Inc. v. Miller Brewing Co.*, Nos. 2:08-cv-827, 2:08-cv-931, 2:08-cv-1112, 2:08-cv-1131, 2:08-cv-1136, 2:09-cv-0022, 2009 WL 1542730, *2 (S.D. Ohio June 2, 2009) (quoting *InBev USA LLC v. Hill Distrib. Co.*, No. 2:05-CV-00298, slip op. at *13 (S.D. Ohio Apr. 3, 2006)). Thus, we consider subsection (D) in light of whether

Miller and Coors exercise control of MillerCoors within the meaning of subsection (B)(4). *See Heineken*, 2011 WL 5626592, at *4.

Neither the Ohio legislature nor the Ohio Supreme Court has defined the term "exercise control" in the context of the Act. Where a statutory term is undefined, the Ohio Supreme Court has held that courts should give the words their "ordinary and common" meaning. *Pruszynski v. Reeves*, 117 Ohio St. 3d 92, 94, 881 N.E.2d 1230, 1233 (Ohio 2008). The district court found that Miller and Coors exercise control over MillerCoors because they each have fifty-percent control and "equal control is a form of control." *Beverage Distribs.*, 803 F. Supp. 2d at 777-79 (citing *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1087 (9th Cir. 2010) (noting that control in stock ownership cases is "a question of fact which depends upon the totality of the circumstances including an appraisal of the influence upon management and policies of a corporation by the person involved" (internal quotation marks omitted))).

The Manufacturers argue that we should interpret "control" under section 1333.85(B)(4) to mean "actual control, as effected through a majority voting interest, not the lesser ability merely to influence that a minority interest may provide." They point to the ordinary meaning of "control" and to the definition of "control" found in the sixth edition of Black's Law Dictionary (the version in print in 1990, the year of the enactment of section 1333): the "[p]ower or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." The Distributors, on the other hand, argue that we should use the definition of "control" reflected in the current edition of Black's Law Dictionary, and applied by courts in the context of federal securities law and by the Ohio legislature in the corporate shareholder transactions section of the Ohio Revised Code: "[t]he direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract or otherwise." Black's Law Dictionary 378 (9th ed. 2009).

The parties agree as to the following facts regarding Miller's and Coors's control of MillerCoors. Miller and Coors each have fifty percent of the voting rights in MillerCoors. Miller and Coors have equal representation on the MillerCoors Board of

Directors, with both Miller and Coors appointing five of the ten Board members. Peter Coors, the Chairman of Coors's Board, is also the Chairman of the MillerCoors Board. The MillerCoors Operating Agreement provides that all of the Board members owe their fiduciary duty to the company that appointed them (Miller or Coors) and *not* to MillerCoors. Effectively, Miller and Coors each has a veto right over the operating decisions of MillerCoors. Neither Miller nor Coors has majority control over MillerCoors. Each party asks us to interpret these facts in favor of its position.

Upon review, we agree with the reasoning of the district court and conclude that Miller and Coors "exercise control" over MillerCoors under the meaning of subsection (B)(4). *See Beverage Distribs.*, 803 F. Supp. 2d at 780-81 ("Miller and Coors exercise control over MillerCoors through their equal voting power, veto power, the appointment of directors, all of whom are present officers or employees of the joint venture partners, and who owe their fiduciary duty only to Miller or Coors, their influence over the executive team, and their funding of MillerCoors."). Even under the Manufacturers' proposed definition of "control," the evidence shows that Miller and Coors together retain the power to "direct, superintend, restrict, govern, [and] oversee" MillerCoors. Because subsection (D) must be applied in light of the meaning and purpose of subsection (B)(4), and given that both Miller and Coors control MillerCoors, we find that MillerCoors is not a "successor manufacturer" under subsection (D). Therefore, MillerCoors may not terminate the distributorships under the procedure outlined in subsection (D). Moreover, MillerCoors has not presented just cause for termination of the distributorships, and the Distributors did not consent to the termination. Thus, MillerCoors is also prohibited from terminating the distributorships under the general provisions of the Act.

## IV.

Therefore, we **AFFIRM** the judgment of the district court.