**SEDGWICK INSURANCE and Angela Sarazin, Plaintiffs,**

**v.**

**F.A.B.E. CUSTOM DOWNSTREAM SYSTEMS, INC., Defendant.**

**Case No. 13–10485.**

United States District Court, E.D. Michigan, Southern Division.

Signed Sept. 17, 2014.

Gary S. Fields, Johnson Law, PLC, Detroit, MI, Alexander H. Benson, Eisenberg, Benson, Matthew L. Turner, Sommers Schwartz, P.C., Southfield, MI, for Plaintiffs.

Robert S. Abramson, Kopka, Pinkus, Dolin & Eads, P.L.C., Farmington Hills, MI, for Defendant.

*ORDER: (1) DENYING PLAINTIFF ANGELA SARAZIN'S OBJECTIONS TO MAGISTRATE JUDGE'S MARCH 25, 2014 ORDER (ECF NO. 42), AND (2) AFFIRMING THE MAGISTRATE JUDGE'S MARCH 25, 2014 ORDER (ECF NO. 41)*

PAUL D. BORMAN, District Judge.

Now before the Court is Plaintiff Angela Sarazin's Objection to Magistrate Judge David R. Grand's March 24, 2014 Order Denying Plaintiff's Motion to Dismiss and/or to Strike Defendant F.A.B.E. Custom Downstream System, Inc's Notice of Non-party Fault. (Pl.'s Obj., ECF No. 42). Defendant F.A.B.E. Custom Downstream System, Inc. ("CDS") filed a response (ECF No. 43) and Plaintiff Sarazin then filed a reply (ECF No. 44).[1]

For the reasons that follow, the Court AFFIRMS the Magistrate Judge's Order

---

1. The Court notes that this case was consolidated pursuant to a stipulation on August 16, 2013 (ECF No. 21), such that *Sedgwick Insurance v. CDS, Inc.*, case number 13–10485 was consolidated with *Angela Sarazin v. Custom Downstream Systems, Inc.*, case number 13–10492. Thereafter the caption in the action was amended to reflect the correct corporate name of the defendant, F.A.B.E. Custom Downstream Systems, Inc., that was misidentified in the pleadings as "Custom Downstream Systems, Inc." (ECF No. 26). Defendant CDS's Notice of Nonparty at Fault was filed on June 14, 2013. (Case No. 13–10492, ECF No. 11).

(ECF No. 41) and DENIES Plaintiff Sarazin's Objection (ECF No. 42).

## I. BACKGROUND

Magistrate Judge Grand's Order adequately sets forth the relevant factual background in this matter and the Court adopts that section of the Order here. (ECF No. 41 at 543–45).

## II. STANDARD OF REVIEW

■ When a party objects to a magistrate judge's ruling on a non-dispositive matter, a district court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). The United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have both held that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (explaining the clearly erroneous standard under Rule 52(a)); *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir.2008) (quoting *U.S. Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. 525). The Court notes that this standard does not allow a reviewing court to reverse a magistrate judge's finding merely because it would have decided the matter differently. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (interpreting the clearly erroneous standard in Rule 52(a)).

■ "The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D.Mich. 1995) (citing *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D.Ohio 1992), *aff'd* 19 F.3d 1432 (6th Cir.1994) (Table)). The "contrary to law" standard requires the district court employ "independent judgment" in determining whether the magistrate judge's legal conclusions "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Glaser*, 785 F.Supp. at 686 (internal citation and quotation marks omitted).

## III. ANALYSIS

■ In the March 25, 2014 Order, the Magistrate Judge denied Plaintiff Sarazin's motion to dismiss and/or strike Defendant CDS's notice of non-party fault. The Magistrate Judge found that Defendant CDS had properly named Plaintiff Sarazin's employer and co-employee in the Notice and also that the Notice was timely and sufficient. Plaintiff Sarazin now raises one objection to the Magistrate Judge's Order, arguing that the Magistrate Judge's conclusion that an employer and co-employee subject to Worker's Disability Compensation Act's ("WDCA") exclusive remedy provision may be named as a non-party at fault, was contrary to Michigan law. *See* MICH. COMP. LAWS § 418.131. Particularly, Plaintiff Sarazin contends that the Magistrate Judge erred in his analysis of this legal issue because he relied upon unpublished and, therefore, not binding case law. Plaintiff Sarazin also appears to argue that the Magistrate Judge erred in finding that an employer owes a duty to its workers to maintain a reasonably safe workplace. (*See* Pl.'s Obj. at 9).

The Michigan comparative fault statutes provide that in a tort action for personal injury the liability of each person is allocated by the trier of fact "in direct proportion to the person's percentage of fault." MICH. COMP. LAWS § 600.2957(1); *see Jones v. Enertel, Inc.*, 254 Mich.App. 432, 434, 656 N.W.2d 870 (2002) ("As a result of the

Legislature's 'fair share liability' system, each tortfeasor is responsible for a portion of the total damage award according to their percentage of fault.") (citation omitted). In assessing percentages of fault, "the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action." MICH. COMP. LAWS § 600.2957(1). Section 600.2957(3) also explicitly recognizes that the comparative fault statutes:

... do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

MICH. COMP. LAWS § 600.2957(3).

Further, the comparative fault statutes provide that in "personal injury actions involving the fault of more than one person, the trier of fact must specifically determine the plaintiff's total damages and the percentage of fault attributed to all persons involved 'regardless of whether the person was or could have been named as a party to the action.'" *Jones*, 254 Mich.App. at 436, 656 N.W.2d 870 (quoting MICH. COMP. LAWS § 600.6304(1)(b)). The term "fault" is then defined in the statute as "an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." MICH. COMP. LAWS § 600.6304(8). The Michigan

Supreme Court has held that "proof of a duty *is* required 'before fault can be apportioned and liability allocated' under the comparative fault statutes, MCL 600.2957 and MCL 600.6304." *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 20, 762 N.W.2d 911 (2009) (per curiam) (emphasis in original).

While these legal principles are not in dispute, Plaintiff Sarazin argues that her employer, Fagerdala USA–Marysville, Inc. ("Fagerdala") and "John Doe, the plant manager", Plaintiff's co-employee, fall under the WDCA's exclusive remedy provision and therefore cannot be properly listed as nonparties at fault by Defendant CDS.[2] Plaintiff Sarazin relies upon two cases for her theory, *Romain v. Frankenmuth Mutual Ins.*, 483 Mich. 18, 762 N.W.2d 911 (2009) (per curiam) and *Kopp v. Zigich*, 268 Mich.App. 258, 707 N.W.2d 601 (2005) (overruled in part by *Romain*, 483 Mich. at 20, 762 N.W.2d 911).

The Magistrate Judge accurately and succinctly summarized the *Kopp* decision:

In *Kopp*, the plaintiff was injured while delivering a hot tub for his employer. He sued the owners of the residence based on premises liability, alleging negligence in maintaining their residence and in not warning him of known dangers. The defendant filed a notice, identifying the plaintiff's employer as a nonparty at fault and alleging that the employer had failed to properly train the plaintiff in the delivery of hot tubs. The plaintiff moved to strike the notice, and the trial court granted the motion, reasoning that a duty must exist before fault can be apportioned under the comparative fault statutes, and finding that plaintiff's employer did not owe him a

---

**2.** The Court notes that while Fagerdala hired Plaintiff as a contract employee through a staffing agency, the parties do not contest that, for legal purposes, Fagerdala is considered Plaintiff's employer.

duty because plaintiff's exclusive remedy against his employer was under the WDCA.

The Court of Appeals disagreed, holding that under a plain reading of the comparative fault statutes, a court is required to award damages based on a proportional determination of a defendant's fault in relation to the plaintiff's total damages caused by all persons who contributed to the injury. *Kopp,* 268 Mich.App. at 260, 707 N.W.2d 601. Accordingly, the Court of Appeals held that the defendant "must have the opportunity to name [the plaintiff's employer] as a potential nonparty at fault and present evidence that [the employer] contributed to plaintiff's injuries." *Id.* The Court of Appeals then stated that "a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated." *Id.* (ECF No. 41, Order at 548).

In *Romain,* the Michigan Supreme Court partially overruled *Kopp,* stating: "Specifically, we overrule the statement in *Kopp v. Zigich* that 'a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated.'" *Romain,* 483 Mich. at 20, 762 N.W.2d 911. The Michigan Supreme Court clarified that "proof of duty *is* required 'before fault can be apportioned and liability allocated' under the comparative fault statutes ..." *Id.* at 21, 762 N.W.2d 911.

Plaintiff Sarazin argues in her objection, just as she did in her motion, that "[t]he proposition that an employer cannot be named as a non-party at fault is implicit within the Court's rulings in *Romain* and *Kopp.*" (Obj. at 7). Plaintiff Sarazin reasons that the Supreme Court's decision in *Romain* only overruled the determination that a duty was not required and "essen-

tially leaves the [trial court's] holding that an employer cannot be named as a nonparty at fault as the only remaining viable principle that can be derived from *Kopp.*" (Obj. at 8).

Defendant CDS also argues that the *Romain* decision only overturned the statement in *Kopp* that a duty was not required, but left standing the portion of *Kopp* that held pursuant to Mich. Comp. Law § 600.2957 and § 600.6304, a party may still be named as a nonparty for purposes of assessing fault, even if that party may not be sued. *See Kopp,* 268 Mich. App. at 260, 707 N.W.2d 601. Defendant CDS relies upon two unpublished cases for this interpretation, *Richardson v. Time Manufacturing,* No. 505CV27, 2005 WL 1923592 (W.D.Mich. Aug. 11, 2005) and *Schmeling v. Whitty,* Nos. 292190, 292740, 2011 WL 520539 (Mich.Ct.App. Feb. 15, 2011).

While decided prior to *Romain,* the *Richardson* decision is persuasive as it addresses the issue of whether an employer subject to the WDCA can be deemed a nonparty at fault. In *Richardson,* the court found that because "fault" is statutorily defined to include intentional conduct in addition to conduct that could give rise to strict liability, "the statute implicitly includes—as non-parties who may be assigned 'fault'—employers whose acts, omissions, or conduct have proximately caused a claimed injury." *Richardson,* 2005 WL 1923592, at *3–4. The *Richardson* court also noted that employers subject to the WDCA were not "expressly excluded" from the fault allocations pursuant to §§ 600.2957 and 600.6304. *Id.*

In *Schmeling,* the Michigan Court of Appeals also addressed the pertinent issue now before this Court: whether an employer and coworker, subject to the WDCA's exclusive remedy, can be properly named as nonparties at fault. *Schmel-*

*ing,* 2011 WL 520539 at *1. In *Schmeling,* the court first acknowledged *Romain* for the proposition that before a party can be named a nonparty at fault, it must be shown that person owed the plaintiff a duty. Then, the court held that:

> The existence of a duty turns on the relationship between the defendant and the person whose injury was allegedly caused by the defendant's act or failure to act. Essentially, the question of duty is a public-policy question of whether the defendant should be held responsible for the conduct or inaction in question. Although workers' compensation benefits are the exclusive *remedy* for an employee injured while working, it does not follow that employers and co-employees do not owe an employee any duty.
>
> A duty encompasses the type of behavior that the person in question must engage in, or refrain from, in order to avoid legal liability. A remedy, however, refers to the kind of relief a claimant may obtain, once the claimant has shown a breach of some duty. Critically, MCL 600.2957(1) and MCL 600.[6]304(1)(b) recognize this distinction by explicitly providing that a defendant can notice a nonparty at fault even though that nonparty could not be sued. In other words, a person *can* owe a duty to a plaintiff even when the plaintiff cannot recover any remedy from that person.

*Schmeling,* 2011 WL 520539, at *1–2 (internal citations omitted, emphasis in the original).

In the Report and Recommendation, the Magistrate Judge rejected Plaintiff Sarazin's interpretation of *Romain* and *Kopp,* finding that both Defendant CDS's argument and the reasoning in *Richardson* and *Schmeling* were more persuasive and on-point. (Report and Recommendation, at 9–12). Accordingly, the Magistrate Judge found that because Plaintiff Sarazin's employer had a duty rooted in both common law and statute to maintain a reasonably safe workplace, Defendant CDS could properly name it and its plant manager as nonparties at fault. (Report and Recommendation at 11).

Plaintiff Sarazin objects and claims that the Magistrate Judge erred in relying upon *Richardson* and *Schmeling* because they are unpublished cases and have no precedential value. Plaintiff Sarazin's argument lacks merit. Here, the Magistrate Judge explicitly acknowledged that *Richardson* and *Schmeling* are "unpublished and, thus not binding on this Court". (Report and Recommendation at 10). The Court further agrees with the Magistrate Judge that Defendant CDS's argument, as well the reasoning of the *Richardson* and *Schmeling* decisions, is persuasive on the issue. Indeed, the *Schmeling* decision is particularly compelling, because, while it is non-binding on this Court, the opinion was issued by the Michigan Court of Appeals and addresses the very same issue.

Moreover, the Court finds that the *Romain* decision did not disturb *Kopp's* holding that the Michigan comparative fault statutes, § 600.2957 and § 600.6304, require that a judge or jury must first make findings of fact regarding the total amount of a plaintiff's damages and "then determine the percentage of the total fault of each person who contributed to the injury, 'regardless of whether the person was or could have been named as a party to the action.' " *Kopp,* 268 Mich.App. at 260, 707 N.W.2d 601 (citation omitted). Here, the Magistrate Judge's finding that Plaintiff Sarazin's employer and coworker owed her a duty and therefore are properly listed as nonparties at fault is in harmony with that undisturbed portion of *Kopp* as well as *Romain.* Accordingly, the Magistrate Judge's decision properly applied Michigan case law and Plaintiff Sarazin's objection

that it was error for the Magistrate Judge to rely upon unpublished case law is denied.

■ Plaintiff Sarazin also appears to object to the Magistrate Judge's finding that "Michigan employers owe duties to their employees, grounded in both statutory and common law, including for example, to provide safe workplaces, free from hazards that likely will cause serious physical harm." (Report and Recommendation, at 11) (citing Michigan Occupational Safety and Health Act ("MIOSHA"), MICH COMP. LAWS § 408.1011(a) and *Villar v. E.W. Bliss,* 134 Mich.App. 116, 350 N.W.2d 920 (1984) (collecting cases)). Plaintiff Sarazin contends that Defendant CDS cannot establish Plaintiff Sarazin's employer or her coworker owed her a statutory duty under MIOSHA because "[d]uty is defined as conduct that an individual must take to avoid becoming subject to liability to another for injuries sustained." (ECF No. 44, Pl.'s Reply at 2, citing Restatement Second Torts § 4). Plaintiff Sarazin reasons that because there are no actions that an employer can take to avoid liability under MIOSHA, an employer does not owe its employees any "duty". (Pl.'s Reply at 2). Further, Plaintiff Sarazin claims that her employer and coworker did not owe her any common law duty because the cases cited, e.g., *Villar,* are distinguishable or predate the WDCA. (*Id.*).

The Court finds Plaintiff Sarazin's arguments are unpersuasive and off the mark in light of case law illustrating that Michigan court's have generally recognized both a common law and statutory duty owed by an employer to its employees. Specifically, the Michigan Supreme Court has explained this duty in conjunction with the WDCA framework:

> [w]orkplace safety, at common law and under MIOSHA, is the responsibility of the workers' employer .... There is,

however, generally no tort liability for failure to measure up to that responsibility. The employer, as a trade-off for the obligation to secure the payment of workers' compensation benefits, is relieved of tort liability under the provision of the workers' compensation act that makes a claim for workers compensation the injured workers' exclusive remedy against the employer.

*White v. Chrysler Corp.,* 421 Mich. 192, 199, 364 N.W.2d 619 (1984) (emphasis added); *see also Ghrist v. Chrysler Corp.,* 451 Mich. 242, 250, 547 N.W.2d 272 (1996) (acknowledging that "an employer has a statutorily imposed duty to make the workplace safe for its employees" but finding MIOSHA does not "abrogate the general duty of a manufacturer to exercise the degree of care necessary in the design and manufacture of a product to avoid all reasonably foreseeable injuries."); *see also Villar,* 134 Mich.App. at 120 n. 1, 350 N.W.2d 920 (recognizing that Michigan courts had long recognized that "as a matter of common law, an employer has a duty to maintain a reasonably safe workplace.") (collecting cases). As the court in *Schmeling* explained, "a person *can* owe a duty to a plaintiff even when the plaintiff cannot recover any remedy from that person." *Schmeling,* 2011 WL 520539, at *2 (emphasis in original). The Court agrees with the Magistrate Judge that this interpretation is consistent with the Michigan comparative fault statutes' plain language that requires the trier of fact to allocate liability among all persons found to at fault "regardless of whether the person is, or could have been, named as a party to the action." MICH. COMP. LAWS § 600.2957(1).

## IV. CONCLUSION

For all these reasons, the Court denies Plaintiff's Objection to Magistrate Judge's March 25, 2014 Order (ECF No. 42) and

affirms the Magistrate Judge's March 25, 2014 Order (ECF No. 41).

IT IS SO ORDERED.

***ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AND/OR TO STRIKE DEFENDANT F.A.B.E. CUSTOM DOWNSTREAM SYSTEMS, INC.'S NOTICE OF NON–PARTY FAULT [35]***

DAVID R. GRAND, United States Magistrate Judge.

SEDGWICK INSURANCE and ANGELA SARAZIN,

Plaintiffs,

v.

CDS, INC. and F.A.B.E. CUSTOM DOWNSTREAM SYSTEMS, INC.,

Defendants.

***ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AND/OR TO STRIKE DEFENDANT F.A.B.E. CUSTOM DOWNSTREAM SYSTEMS, INC.'S NOTICE OF NON–PARTY FAULT [35]***

DAVID R. GRAND, United States Magistrate Judge.

On January 21, 2014, Plaintiff Angela Sarazin ("Sarazin") filed a Motion to Dismiss and/or to Strike Defendant F.A.B.E. Custom Downstream Systems, Inc.'s ("CDS") Notice of Non–Party Fault. (Doc. # 35). CDS filed a response to this motion on February 11, 2014 (Doc. # 38), and Sarazin filed a reply on February 17, 2014 (Doc. # 39). An Order of Reference was entered on January 23, 2014, referring Sarazin's motion to the undersigned for a

**1.** Sedgwick Insurance ("Sedgwick"), the worker's compensation carrier paying Sarazin's benefits, had filed suit against CDS a day earlier, on February 6, 2013. (Case No. 13–

hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. # 36).

## A. Background

This is a product liability/tort action arising out of an injury suffered by Sarazin while working as a contract employee (through Manpower, a temporary staffing agency) on the assembly line at Fagerdala USA–Marysville, Inc. ("Fagerdala"). The parties do not dispute that, for legal purposes, Fagerdala is considered Sarazin's employer. Fagerdala produces a variety of products, including foam pool flotation "noodles." (Doc. # 1 at ¶ 8). Sarazin alleges that, on February 24, 2010, while cleaning up before going home, she noticed two pool noodles stuck in a Servo Fly–Knife Cutter, a machine designed, manufactured, and sold by CDS. (*Id.* at ¶¶ 12, 13). Believing that the machines were off/down, Sarazin reached into the machine to remove the pool noodles. Sarazin alleges that, because of the absence of various safety measures, the machine started and her right hand was completely severed. (*Id.* at ¶¶ 15, 16).

On February 7, 2013, Sarazin filed a tort action against CDS, the designer, manufacturer, and seller of the Servo Fly–Knife Cutter machine, which was assigned Case No. 13–10492.[1] (Doc. # 1). CDS filed its answer and affirmative defenses on April 29, 2013. (Doc. # 8). Included in CDS' affirmative defenses were the following:

> 2. There was superseding and intervening conduct, negligence, and acts of others, which were the proximate cause of the accident at issue.

> \* \* \*

10485). The two actions were later consolidated into the first-filed action, No. 13–10485. (Doc. # 6).

15. The product may have been altered by Fagerdala, after the machine was installed. As such Defendant has no liability.

* * *

30. The Plaintiff's employer, Fagerdala USA, and/or supervisor was wholly or partially responsible for Plaintiff's injuries.

* * *

32. That the machine was negligently maintained by Plaintiff's employer, Fagerdala USA.

* * *

35. Fagerdala USA failed to request to install optional tubular pipes on each side of the blade safety guard, an additional safety feature.

36. That when the machine left CDS, the stainless steel brushings on each side of the blade housing were not opened. The opening was done by the customer (Fagerdala), according to the size of the material that would be pushed through the brushings to be cut.

(*Id.* at 8–11).

On June 14, 2013, CDS filed a notice of nonparty fault (the "Notice") naming Fagerdala and "John Doe, the plant manager" as nonparties at fault pursuant to MCL 600.2957 and MCR 2.112(K). (Case No. 13–10492, Doc. # 11). Specifically, CDS asserted:

> *Basis of Fault:* Refer to Plaintiff's Complaint. If plaintiff's theories are accepted as true for the purposes of this Notice only, without admission of any claim or waiver of any defense,

Defendant asserts the fault of Fagerdala USA–Marysville Inc. and John Doe, the plant manager, whose acts, omissions, or breaches of duty are a cause, contributing cause, or sole cause of damages claimed by the Plaintiff.

(*Id.*).

Discovery then apparently proceeded without incident, though, as indicated in CDS' discovery plan, it anticipated that discovery would "involve[ ] depositions of numerous witnesses who the parties are attempting to track down, due to the fact that plaintiff's former employer is no longer in business." (Doc. # 24 at 2). Apparently, during those depositions, CDS received some (though still imperfect) information about the "John Doe" plant manager's identity. (Doc. # 38 at 22). It also discovered more details about its previously stated affirmative defenses. As CDS explains in its opposition to Sarazin's instant motion, it now alleges that Fagerdala and its plant manager were at fault for Sarazin's injury because CDS offered a 36–inch guard for the Servo Fly–Knife Cutter machine, but Fagerdala declined to purchase it. (*Id.* at 14). CDS also asserts that Fagerdala modified the machine, installing a 12–inch guard, which was too small. (*Id.*). CDS did not, however, amend its Notice in any respect.

On January 21, 2014, Sarazin filed the instant motion to strike and/or to dismiss CDS' Notice. (Doc. # 35). In her motion, Sarazin argues that CDS' Notice must be stricken pursuant to FRCP 12(f) because it is insufficient under Michigan law.[2] Sara-

---

2. Sarazin's motion seems procedurally improper under FRCP 12(f) because that rule provides only for the striking of "pleadings" as defined by FRCP 7(a), and CDS' notice of nonparty fault is not such a "pleading." *See* FRCP 7(a). *See also Design Basics, LLC v. Chelsea Lumber Co.,* 2013 WL 3471142, at *1 (E.D.Mich. July 10, 2013) ("... Rule 12(f) is not the proper vehicle for Plaintiff's challenge to Defendants' notice of non-party fault ... the notice of non-party fault is best characterized as providing notice to the court of a factual issue ... the Court concludes that Plaintiff's motion to strike is best construed as

zin further argues that CDS' Notice should be dismissed pursuant to FRCP 12(b)(6) because Michigan law purportedly "recognizes that fault cannot be apportioned to Fagerdala, or a co-employee, because they were subject to the Worker's Compensation Disability Act and therefore owed her no duty." (*Id.* at 12). These arguments will be addressed in turn.

## B. Analysis

### 1. *Adequacy of the Notice*

■ The parties agree that MCR 2.112(K), entitled "Fault of Nonparties; Notice," is applicable as substantive law and, thus, must be applied by this federal court sitting in diversity jurisdiction. *See Beverage Distributors, Inc. v. Miller Brewing Co.*, 690 F.3d 788, 792 (6th Cir. 2012). As the Sixth Circuit has explained:

In this case, jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, we apply state law as decided by the Michigan Supreme Court. If the Michigan Supreme Court has not yet addressed the issue presented, we must predict how it would rule, by looking to "all relevant data," including state appellate decisions. "[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."

*Kessler v. Visteon Corp.*, 448 F.3d 326, 329–30 (6th Cir.2006) (internal citations omitted).

MCR 2.112(K)(3)(a) provides that "[a] party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault." In turn, MCR 2.112(K)(3)(b) and (c) provide the requisite contents and timing of such a notice:

(b) The notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.

The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.

The Court finds that CDS' Notice, filed well within the 91–day requirement, satisfied MCR 2.112(K)(3)'s requirements. First, Sarazin does not dispute that CDS properly identified her former employer, "Fagerdala USA–Marysville, Inc." (Case No. 13–10492, Doc. # 11 at 1–2). Rather, in terms of the identification component, she only challenges the Notice insofar as it allegedly "fails to sufficiently identify the manager that is being asserted as being at fault." (Doc. # 35 at 15). Sarazin asserts that, rather than simply identifying the manager as "John Doe (plant manager)," CDS "could have and should have identified the 'manager' at issue by identifying what dates this manager worked and/or what actions this manager is alleged to

a motion in limine seeking to prevent Defendants from raising certain evidence or argu-

ments at trial.").

have taken which renders him at fault." (*Id.*). This argument lacks merit.

■ Michigan courts allow a party to name unknown persons in a notice of non-party fault. *See Rinke v. Potrzebowski,* 254 Mich.App. 411, 414, 657 N.W.2d 169 (2002). As was made clear at oral argument, it is undisputed that CDS did not have actual knowledge of the plant manager's name until it deposed certain Fagerdala employees, and even then received only imperfect information. Sarazin's counsel asserted that he had obtained the plant manager's full name months earlier by serving a FOIA request for the OSHA reports related to Sarazin's injury. Sarazin argued that because its counsel was able to obtain the manager's name prior to the depositions, CDS' failure to do so shows it did not act with "reasonable diligence." But Sarazin offered no case law to suggest that the statute's "reasonable diligence" requirement mandates that a lawyer use any and all means necessary to obtain the nonparty at fault's identity as soon as possible. The Court finds that CDS' timely use of traditional litigation discovery techniques, such as taking depositions, suffices.[3]

Sarazin also argues that CDS' Notice is inadequate because it "fails to set forth any basis for [CDS'] belief that these nonparties were at fault," and constitutes nothing more than *"ipse dixit."* But this is not true. Particularly considering CDS' affirmative defenses, which it served months earlier, its Notice provides the "brief statement of the basis for believing the nonparty is at fault" that the statute requires.[4]

Other considerations also favor denying Sarazin's instant motion. Although counsel for CDS conceded at oral argument that he should have amended the Notice after he obtained better information during the August 2013 depositions, Sarazin's counsel was represented during those depositions and became aware of the information at that time. In fact, Sarazin's counsel conceded at oral argument that he could not point to any prejudice suffered as a result of CDS' failure to have amended its Notice. To that end, the Court also notes that CDS filed its Notice on June 14, 2013, and Sarazin did not file the instant motion until January 21, 2014, more than seven months later. If Sarazin legitimately believed that she could not determine the identity of the named nonparties at fault, or understand the basis for CDS' assertion of nonparty fault, it stands to reason that she would have acted much sooner. The fact that she did not do so (and her admission that CDS' Notice has not prejudiced her) supports CDS' assertion that its Notice was timely and sufficient.

In light of this Court's findings above that CDS acted with reasonable diligence, and given Sarazin's admission that she has suffered no prejudice as a result of the timing and contents of CDS' Notice, it would make no sense to strike CDS' Notice only to have it move to file an amended one. *See* MCR 2.112(k)(3)(c) (allowing "a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing

---

**3.** The Court also notes that learning the manager's full name was slowed "due to the fact that plaintiff's former employer is no longer in business." (Doc. # 24 at 2). And, given principles of *respondeat superior,* it is unclear whether naming the plant manager separately

from Fagerdala has any practical significance here.

**4.** Sarazin has not cited a single case interpreting the "brief statement" requirement.

of the notice does not result in unfair prejudice to the opposing party.").

### 2. Propriety of Naming Sarazin's Employer as a Nonparty at Fault

Sarazin also argues that, under Michigan law, neither an employer nor a co-employee can be named as a nonparty at fault. (Doc. # 35 at 16–19). The comparative fault statutes provide that in a tort action for personal injury, the trier of fact must allocate liability among all persons found to have been at fault, "regardless of whether the person is, or could have been, named as a party to the action." MCL § 600.2957(1). MCL § 600.2957(3) further provides that the statutes:

> ... do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided.... Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

MCL § 600.2957 references MCL § 600.6304, which provides, in relevant part, that in determining the proper percentage of fault, the trier of fact is required to consider the total fault of all persons that contributed to the death or injury, "regardless of whether the person was or could have been named as a party to the action." MCL § 600.6304(1)(b). "Fault" is defined as "an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." MCL § 600.6304(8). Interpreting these statutory provisions, the Michigan

Supreme Court has held that "proof of a duty *is* required 'before fault can be apportioned and liability allocated' under the comparative fault statutes, MCL 600.2957 and MCL 600.6304." *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21, 762 N.W.2d 911 (2009) (emphasis in original).

The parties agree on these principles of law; it is from here, however, that their positions diverge. Sarazin argues that, under Michigan law, an entity subject to the Worker's Disability Compensation Act's ("WDCA") exclusive remedy provision cannot be named as a nonparty at fault. (Doc. # 35 at 16–19). In support of her argument, Sarazin relies on two Michigan cases, *Kopp v. Zigich*, 268 Mich.App. 258, 707 N.W.2d 601 (2005), and *Romain, supra*. In *Kopp*, the plaintiff was injured while delivering a hot tub for his employer. He sued the owners of the residence based on premises liability, alleging negligence in maintaining their residence and in not warning him of known dangers. The defendant filed a notice, identifying the plaintiff's employer as a nonparty at fault and alleging that the employer had failed to properly train the plaintiff in the delivery of hot tubs. The plaintiff moved to strike the notice, and the trial court granted the motion, reasoning that a duty must exist before fault can be apportioned under the comparative fault statutes, and finding that plaintiff's employer did not owe him a duty because plaintiff's exclusive remedy against his employer was under the WDCA.

The Court of Appeals disagreed, holding that under a plain reading of the comparative fault statutes, a court is required to award damages based on a proportional determination of a defendant's fault in relation to the plaintiff's total damages caused by all persons who contributed to the injury. *Kopp*, 268 Mich.App. at 260, 707 N.W.2d 601. Accordingly, the Court

of Appeals held that the defendant "must have the opportunity to name [the plaintiff's employer] as a potential nonparty at fault and present evidence that [the employer] contributed to plaintiff's injuries." *Id.* The Court of Appeals then stated that "a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated." *Id.*

As Sarazin points out, the Michigan Supreme Court at least partially overruled *Kopp* in *Romain,* stating: "Specifically, we overrule the statement in *Kopp v. Zigich* that 'a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated.'" *Romain,* 483 Mich. at 20, 762 N.W.2d 911. Instead, the *Romain* court held that "proof of a duty *is* required 'before fault can be apportioned and liability allocated' under the comparative fault statutes, MCL 600.2957 and MCL 600.6304." *Id.* at 21, 762 N.W.2d 911. Although the parties appear to agree that *Kopp* and *Romain* are instructive, each party argues that these cases, read together, support its position.

Sarazin asserts that, "The proposition that an employer cannot be named as a non-party at fault is implicit within the Court's rulings in *Romain* and *Kopp.*" (Doc. # 35 at 18). Specifically, Sarazin claims that "the Supreme Court's decision in *Romain* to overrule only *Kopp's* determination that duty was not required, essentially leaves the holding that an employer cannot be named as a non-party at fault as the only remaining viable principle that can be derived from *Kopp.*" (*Id.*). In contrast, CDS argues that the Supreme Court in *Romain* stated very clearly that it was overruling only one statement in *Kopp,* namely the statement that "a plain reading of the comparative fault statutes does not require proof of a duty before

fault can be apportioned and liability allocated." (Doc. # 38 at 18). Therefore, asserts CDS, *Kopp* is still binding authority for the portion of its holding that, under MCL § 600.2957 and § 600.6304, a party may still be named as a nonparty for purposes of assessing fault, even if that party may not be sued, so long as there is proof that the nonparty owed the plaintiff a duty. (*Id.*).

In support of its argument, CDS relies on *Richardson v. Time Mfg.,* 2005 WL 1923592 (W.D.Mich. Aug. 11, 2005), and *Schmeling v. Whitty,* 2011 WL 520539 (Mich.Ct.App. Feb.15, 2011). (Doc. # 38 at 17–20). Sarazin correctly points out that both of these cases are unpublished and, thus, not binding on this Court. However, both cases squarely address the issue at hand, and the Court finds their conclusions well-reasoned.

In *Richardson,* which was decided before *Kopp,* the court noted that because "fault" is statutorily defined to include both intentional conduct and conduct which could give rise to strict liability, "the statute implicitly includes—as non-parties who may be assigned 'fault'—employers whose acts, omissions, or conduct have proximately caused a claimed injury." *Richardson,* 2005 WL 1923592, at *3–4.

Similarly, in *Schmeling,* the Michigan Court of Appeals considered the plaintiff's motion to strike the defendant's notice of nonparty fault, which named the plaintiff's employer and coworker. *Schmeling,* 2011 WL 520539, at *1. The court cited *Romain* for the proposition that before a person can be named as a nonparty at fault, it must first be shown the person owed a duty to the plaintiff. *Id.* The *Schmeling* court then stated:

> The existence of a duty turns on the relationship between the defendant and the person whose injury was allegedly caused by the defendant's act

or failure to act. Essentially, the question of duty is a public-policy question of whether the defendant should be held responsible for the conduct or inaction in question. Although workers' compensation benefits are the exclusive *remedy* for an employee injured while working, it does not follow that employers and co-employees do not owe an employee any duty.

\*     \*     \*·

A duty encompasses the type of behavior that the person in question must engage in, or refrain from, in order to avoid legal liability. A remedy, however, refers to the kind of relief a claimant may obtain, once the claimant has shown a breach of some duty. Critically, MCL 600.2957(1) and MCL 600.2304(1)(b) recognize this distinction by explicitly providing that a defendant can notice a nonparty at fault even though that nonparty could not be sued. In other words, a person *can* owe a duty to a plaintiff even when the plaintiff cannot recover any remedy from that person. We therefore conclude that the trial court erred as a matter of law by granting plaintiff's motion to strike defendants' notice of nonparty fault.

*Id.* at \*1–2.

The Court finds the reasoning of the *Richardson* and *Schmeling* courts, as well as CDS' interpretation of *Kopp* and *Romain*, to be persuasive. It simply does not follow that, because employers are subject to the WDCA, they do not owe their employees a duty, as Sarazin suggests.[5] Rather, as CDS argues, the Court believes that Michigan employers owe duties to their employees, grounded in both statutory and common law, including, for example, to provide safe workplaces, free from hazards that likely will cause serious physical harm. *See, e.g.,* MCL § 408.1011(a); *Villar v. E.W. Bliss,* 134 Mich.App. 116, 350 N.W.2d 920 (1984) (citing cases). As the *Schmeling* court recognized, "a person *can* owe a duty to a plaintiff even when the plaintiff cannot recover any remedy from that person." *Id.* at \*2. Moreover, the Court finds this interpretation to be consistent with the comparative fault statute's provision that requires the trier of fact to allocate liability among all persons found to have been at fault, "regardless of whether the person is, or could have been, named as a party to the action." MCL § 600.2957(1).

Because Fagerdala, as Sarazin's employer, had a duty to maintain a reasonably safe workplace, CDS could properly name Fagerdala and its plant manager as nonparties at fault in this product liability/tort action. *See Romain,* 483 Mich. at 20, 762 N.W.2d 911; *Schmeling,* 2011 WL 520539 at \*1–2; *Richardson,* 2005 WL 1923592, at \*2–4.

For all of the above reasons, **IT IS ORDERED** that Plaintiff's Motion to Dismiss and/or to Strike Defendant CDS' Notice of Non–Party Fault **(Doc. # 35)** is **DENIED.**

Dated: March 25, 2014.

---

**5.** Specifically, Sarazin argues that "an employer subject to Worker's Compensation owes no duty" because "duty" is defined as "conduct that an individual must take to avoid becoming subject to liability to another for injuries sustained." (Doc. # 35 at 18–19 (citing Restatement Second of Torts, § 4)). According to Sarazin, because "there are no actions that an employer can take to avoid liability for Worker's Compensation Damages," it follows then that, by definition, there can be no duty. The Court simply is not persuaded by this reasoning.